27 S.W.3d 340 (2000)
In the Matter of K.J.O.
No. 05-99-01070-CV.
Court of Appeals of Texas, Dallas.
September 12, 2000.
Paul W. Leech, Grand Prairie, for Appellant.
William T. (Bill) Hill, Jr., Kenneth Jefferson Bray, Lori L. Ordiway, Dallas, for Appellee.
Before Justices KINKEADE, WRIGHT, and BRIDGES.

*341 OPINION
Opinion By Justice BRIDGES.
K.J.O. appeals the trial court's adjudication that she engaged in delinquent conduct. A jury found appellant engaged in delinquent conduct and recommended she be committed to the Texas Youth Commission for eight years. In four issues on appeal, appellant argues (1) the trial court erred in ruling that defense counsel must consent to a juvenile's right to testify and unduly restricting counsel's questioning of witnesses at the hearing on appellant's motion for new trial; (2) she received ineffective assistance of counsel; and (3) the State failed to reveal the identity of defense witnesses. Concluding appellant received ineffective assistance of counsel, we reverse the trial court's adjudication that appellant engaged in delinquent conduct and remand this cause for a new trial.
At appellant's adjudication hearing, Victor J. Flowers testified he was working as a security guard at an apartment complex on January 11, 1999. At approximately 1:30 a.m., Flowers was sitting in his car writing out his daily report when his supervisor alerted him over his radio that two suspects were wanted in connection with an earlier offense. The suspects were described as a "skinny" Latin female wearing a white Adidas jacket and a "chubby" Hispanic female wearing a black Adidas jacket. Flowers saw two females who fit the description climb through a hole in a fence and alerted his supervisor over the radio. Flowers got out of his car, identified himself as a security officer, and told the females he needed to talk to them. The heavy-set female withdrew what appeared to be an automatic pistol, and she and the other female began running. Flowers called his supervisor and took cover.
Flowers's supervisor notified police and asked Flowers to follow the two females. Flowers followed, but the two females jumped over a fence. As they climbed over the fence, Flowers noticed the heavy-set female had "Baby" tattooed on her neck, and the skinnier female was wearing white pants with a stain from the fence. Flowers climbed on a truck and jumped over the fence. As his feet hit the ground, Flowers heard a series of clicks, looked up, and saw the two females pointing guns at him. In addition to the clicking sounds, Flowers heard one female say, "Mine ain't working" and the other one reply, "Mine neither." He also heard someone say, "Kill him. Kill him." Flowers identified appellant as the skinnier female who pointed a gun at him. Flowers dove to the ground, and the two females ran away. He tried to follow them but lost them. Twenty or thirty minutes later, Flowers saw the police arresting two females in the parking lot of the Capricornio bar. Flowers recognized the females as the two who attempted to shoot him; one had the "Baby" tattoo and the other had the stain on her pants. He also recognized a jacket that police found under the seat of a truck nearby.
Dallas police officer Michael Bryan testified he received a report over his radio regarding two Hispanic females on January 11, 1999. One of the females was reported to have "Baby" tattooed on her neck, and both females had long dark hair and were wearing Adidas jackets, one white and one black. The report said a security guard had been following the females and observed them getting into a blue Cadillac. In response to questioning by the prosecutor, Bryan testified it might have been someone other than the security guard who saw them getting in the blue Cadillac. Bryan drove around the area and saw a blue Cadillac parked in a parking lot across the street from the Capricornio bar. Bryan approached the Cadillac and saw a Hispanic male and female inside. In front of the Cadillac was a Ford pickup. A female got out of the Cadillac, and Bryan asked her name. She said "Baby," and Bryan saw the word "Baby" tattooed on her neck. Bryan recognized "Baby" as one of the suspects mentioned in the radio report and asked her to put *342 her hands on the trunk of the vehicle. At that point, another vehicle rammed the vehicle next to his squad car. Three men exited the vehicle and approached Bryan, and he retreated approximately twenty yards, drew his gun, and ordered them to stop. Bryan called for emergency backup as the men continued to approach. Other officers and a helicopter arrived, and appellant and a Latin male got out of the Ford pickup. When she got out of the pickup, appellant had her hands up.
Dallas police officer Ernest Fierro testified he arrived at the scene and saw Bryan, with weapon drawn, ordering people to the ground. Fierro arrested appellant who was wearing white pants but no jacket. When Bryan informed Fierro that appellant had gotten out of the Ford pickup, Fierro searched the pickup. Fierro found no weapons, but he found a reversible black and white Adidas jacket. Flowers arrived on the scene, and Fierro asked Flowers if the jacket he found in the truck was "the jacket the Defendant was wearing." Flowers said it was, pointed at appellant, and said she was the one who had been wearing the jacket. Appellant's trial counsel called no witnesses. The jury found appellant engaged in delinquent conduct.
We first address appellant's third issue on appeal in which she argues she received ineffective assistance of counsel. The Supreme Court of Texas has never directly addressed whether appellants in juvenile cases may attack the effectiveness of their trial counsel. However, the United States Supreme Court has held that a juvenile is entitled to representation by counsel. In re Gault, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The right to representation includes the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Numerous appellate courts in Texas have held a juvenile is entitled to raise on appeal the issue of his trial counsel's effectiveness. In re M.S., 940 S.W.2d 789, 791 (Tex.App.-Austin 1997, no writ.); R.X.F. v. State, 921 S.W.2d 888, 902 (Tex.App.-Waco 1996, no writ); In re M.R.R., 903 S.W.2d 49, 51-52 (Tex.App.-San Antonio 1995, no writ); M.B. v. State, 905 S.W.2d 344, 346 (Tex. App.-El Paso 1995, no writ). In other Texas cases, courts have simply reviewed the effectiveness of a juvenile's trial counsel without specifically stating that a juvenile is entitled to such a review. In re S.P., 9 S.W.3d 304, 306 (Tex.App.-San Antonio 1999, no pet.); In re J.F., 948 S.W.2d 807, 811 (Tex.App.-San Antonio 1997, no writ); see In re C.W.C., 920 S.W.2d 387, 391 (Tex.App.-Houston [1st Dist.] 1996, no writ). Courts in other jurisdictions have directly stated a juvenile is entitled to challenge on appeal the effectiveness of his trial counsel. In re A.V., 285 Ill.App.3d 470, 220 Ill.Dec. 847, 674 N.E.2d 118, 120 (1996) ("right to effective assistance of counsel applies in juvenile, as well as adult proceedings, and in probation hearings as well as criminal trials"); Perkins v. State, 718 N.E.2d 790, 793 (Ind.Ct.App.1999) ("[l]ike defendants in criminal proceedings, respondents in juvenile delinquency proceedings have a Sixth Amendment right to the effective assistance of counsel"). We conclude that, although a juvenile delinquency trial is a civil proceeding, it is quasi-criminal in nature and, therefore, the juvenile is guaranteed the constitutional right to effective assistance of counsel which he would have as an adult in a criminal proceeding. See C.E.J. v. State, 788 S.W.2d 849, 852 (Tex.App.-Dallas 1990, writ denied) (applying Batson to juvenile delinquency proceeding).
Turning to the facts of this case, we evaluate the effectiveness of counsel during guilt-innocence and punishment under the standard enunciated in Strickland. See Hernandez v. State, 988 S.W.2d 770, 770 (Tex.Crim.App.1999) (adopting Strickland standard for ineffective assistance of counsel at punishment phase of trial); Hernandez v. State, 726 S.W.2d 53, 57 (Tex.Crim.App.1986) (adopting Strickland standard for ineffective assistance of counsel *343 at guilt-innocence phase of trial). To prevail on a claim counsel was ineffective, appellant must show: (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for counsel's unprofessional errors, a different outcome would have resulted. See Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. The record must support a claim of ineffective assistance. See Johnson v. State, 691 S.W.2d 619, 627 (Tex.Crim.App.1984).
We have reviewed the record of appellant's adjudication proceeding and note appellant's trial counsel called no witnesses. On February 23, 1999, the day of trial, counsel had not spoken with any witnesses other than appellant and appellant's mother. At a later hearing on appellant's motion for new trial, counsel testified she did not intend to put anyone on the stand at trial and did not tell appellant of this intent before trial, although counsel testified she told appellant's mother a couple of days before trial. The morning of trial, counsel attempted to work out a plea agreement with the prosecutor. She did not get appellant's permission to enter into plea negotiations. At one point, counsel anticipated that appellant was going to plead guilty, and she and appellant approached the bench. The trial judge looked at appellant and asked her, "Are you pleading guilty because you are guilty?" and appellant said, "No, I'm not guilty." The judge then refused to accept appellant's plea, and the trial proceeded. Counsel did not ask for a continuance, even though she had not spoken to any witnesses. Further, she did not tell the trial court she had unsuccessfully attempted to serve subpoenas on some defense witnesses. During voir dire of a prospective juror, the trial court stated appellant's trial counsel had "vetoed" appellant's ability to testify in this case. Thus, the only direct evidence presented was that proffered by the State.
In her cross-examination of Flowers, appellant's trial counsel asked, "To your knowledge did my client or her companion have a chance to leave the immediate area before the detention by the police?" Counsel's question presupposes appellant and Baby were together and committed the charged offense. Flowers answered affirmatively. While this misstatement alone does not render trial counsel ineffective, it is some indication that appellant's counsel presumed appellant was guilty. The jury ultimately found appellant engaged in delinquent conduct.
At the hearing on appellant's motion for new trial, trial counsel testified she was hired by appellant's mother to represent appellant on January 25, 1999. Appellant's mother gave counsel the first name of R.E., a friend who was with appellant on the night of January 11, 1999. Counsel eventually learned R.E.'s last name but did not get her address. Counsel learned from appellant that R.E. was inside the Capricornio "when this incident happened," but counsel was unsure whether R.E. was inside the night club when the arrest took place or when the incident happened. Counsel asked appellant's mother to provide full names and telephone numbers of witnesses and to bring the witnesses to her office. Appellant's mother also told counsel the full name of the security guard at Capricornio. Counsel attempted to subpoena the guard but discovered on February 18, 1999 that the subpoena had not been served. The Dallas county constable who attempted to serve the subpoena told counsel the guard was not at the night club when he went to serve the subpoena. Counsel was never able to talk to anybody at the night club and did not go there in person.
Appellant's mother gave counsel the name "Juan" and Juan's telephone number, but Juan never responded to counsel's messages. Counsel testified she repeatedly tried to get addresses, phone numbers, and full names of witnesses, and appellant's mother told her she would try to obtain the information. Counsel also told *344 appellant's mother to bring the witnesses to counsel's office, but she never did.
Counsel received a copy of the petition and a predisposition probation report on January 26, 1999. She received nothing else from the Dallas County District Attorney's office and requested nothing. Counsel also did not ask to see the district attorney's files concerning this case. On February 10, 1999, counsel spoke with appellant for the first and only time before trial. Counsel testified her schedule prevented her from speaking with appellant sooner, though she supposed she could have spoken with her on a Saturday or Sunday. Appellant told counsel she was innocent. She also told counsel she was with her boyfriend, Hector, at the time of her arrest and that Hector was incarcerated in Dallas County awaiting deportation. Counsel understood that if she did not get Hector's deposition soon she would lose his testimony when he was deported. Nevertheless, counsel made no effort to preserve Hector's testimony because his credibility would be in question in light of his arrest for drug possession. Counsel did not verify that Hector's incarceration had anything to do with drug possession.
Appellant also told counsel about two young women who were with her for the three hours preceding her arrest. The two young women could account for appellant's whereabouts and establish that she was in a car driving between three bars trying to find her boyfriend shortly before she was arrested. Counsel did not contact the two young women because "neither one was present when the alleged incident took place," and they were inside the night club restroom at the time appellant was arrested. Appellant told counsel the clothes she was wearing at the time of her arrest did not match the description Flowers gave of the clothes worn by the thinner woman who pointed a gun at him. Appellant told counsel the coat she was wearing was in the hands of a Dallas police officer conducting an inventory of things taken from her. Counsel did not go and look at the clothes taken from appellant at the time of her arrest and did not determine whether appellant's clothes were removed when she was brought to the juvenile detention center. Counsel testified she did not ask the district attorney's office for a copy of the police arrest report and did not visit the scenes of the arrest or assault to determine lighting conditions. She testified neither appellant nor her mother left her any telephone messages saying they were concerned about contacting witnesses.
Appellant's friend R.E. testified she was with appellant on the night appellant was arrested. R.E. testified appellant picked her up at her house at 10:00 p.m., and they went to appellant's house with another girl to get ready to go out for the evening. According to R.E., she, appellant, and the other girl left appellant's house at about 12:00 or 12:15 a.m. in appellant's mother's truck and drove around looking for appellant's boyfriend. They arrived in Dallas at approximately 12:30 a.m. and drove by three bars, Paradise, The Office, and finally Capricornio, where they parked at approximately 12:40 a.m. R.E. testified she was with appellant until a few minutes before her arrest when R.E. went inside Capricornio.
Valerie Vega testified she and her husband arrived at Capricornio around 12:30 a.m. on the night appellant was arrested. Vega's husband recognized appellant's mother's truck in the parking lot, and Vega testified she saw appellant and a young man in the truck. Vega and her husband discussed going inside Capricornio and, at about 1:10 a.m., Vega's husband went inside. Vega walked to an apartment complex behind the parking lot. Five or ten minutes later, Vega heard a helicopter and police and walked back to the parking lot at about 1:20 or 1:30 a.m. Juan Yruegas, the owner of Capricornio, testified he was outside Capricornio at about 12:45 a.m. and saw appellant drive a pickup truck into the parking lot. Two other people were in the pickup truck.
*345 Appellant introduced into evidence the clothes she was wearing on the night of her arrest. These clothes included a pair of blue jeans, not white pants as Flowers and Fierro testified at trial. Appellant testified she was under arrest and handcuffed when police asked her to bend over to show an alleged mark on the back of her pants. The record does not reflect whether such a mark appeared on the back of the jeans when they were introduced at the hearing on appellant's motion for new trial.
We have reviewed the entire record and conclude the performance of appellant's trial counsel fell below an objective standard of reasonableness in that it appears counsel wholly failed to investigate the facts and circumstances surrounding appellant's alleged involvement in the underlying offense. Further, a reasonable probability exists that, had appellant's counsel questioned the available witnesses, she would have been able to establish an alibi for appellant on the night she was arrested, resulting in a different outcome at trial. Under the facts of this case, we conclude appellant received ineffective assistance of counsel. See Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052; Hernandez, 726 S.W.2d at 57. Accordingly, we sustain appellant's third issue on appeal. Because of our disposition of appellant's third issue on appeal, we need not address appellant's remaining issues on appeal.
We reverse the trial court's judgment and remand this cause for a new trial.