229 S.W.3d 837 (2007)
In the Matter of S.C.
No. 06-06-00053-CV.
Court of Appeals of Texas, Texarkana.
Submitted May 9, 2007.
Decided July 5, 2007.
Rehearing Overruled August 14, 2007.
*838 Gary L. Waite, Attorney At Law, Paris, TX, for appellant.
Marilee H. Brown, Lamar County Asst. Dist./County Atty., Paris, TX, for appellee.
Before MORRISS, C.J., CARTER and MOSELEY, JJ.

OPINION
Opinion by Chief Justice MORRISS.
Who started the pushing that morning at Paris High School was disputed. All agreed that S.C. and Cleda Brownfield were at cross purposes before normal school hours began. S.C., then a fourteen-year-old high school freshman, wanted into the school building. Brownfield, a "special services aide, teacher's assistant," was tasked to keep out all students except those having business which specifically *839 authorized early entry.[1] S.C. thought her business justified her early entry; Brownfield ruled to the contrary. The ensuing altercation resulted in S.C. being charged with, tried for, and found guilty by a six-person jury as having engaged in, delinquent conduct by assaulting a public servant.[2]See TEX. FAM.CODE ANN. § 54.03 (Vernon Supp.2006).
On appeal,[3] S.C. contends that the evidence is insufficient because the State did not prove that S.C. was under seventeen years of age; that Brownfield was a school teacher as alleged in the State's petition; or that Paris High School is a governmental entity, a requirement to establish that Brownfield was a public servant. S.C. also argues that she had ineffective assistance of counsel at trial.[4]
We affirm the judgment of the trial court because we hold that (1) S.C. did not contest that she was under seventeen years of age, (2) the evidence is sufficient to establish that Brownfield was a public servant, (3) the evidence is sufficient to establish that Paris High School is a governmental entity, and (4) ineffective assistance of counsel has not been shown.
(1) S.C. Did Not Contest that She Was Under Seventeen Years of Age
S.C.'s first contention is that the proceeding should be reversed because the State provided no evidence that she was a juvenile.[5] The State's response is that the *840 Texas Family Code requires the State to plead that S.C. is within the jurisdictional age range, but does not require the State to later adduce evidence on that point unless the matter is otherwise put in issue by the juvenile.
This issue is decided for us by the Texas Family Code. The juvenile justice code covers all cases involving the delinquent conduct of a person who is within the definition of a child. TEX. FAM.CODE ANN. § 51.04 (Vernon 2002). A child is a person ten years of age or older and under seventeen years of age. TEX. FAM.CODE ANN. § 51.02(2) (Vernon Supp.2006). Any objection to the trial court's jurisdiction over the child because of age must be raised at the adjudication hearing or discretionary transfer hearing; otherwise, the juvenile waives the right to object later on that basis. TEX. FAM.CODE ANN. § 51.042 (Vernon 2002); see In re E.D.C., 88 S.W.3d 789 (Tex.App.-El Paso 2002, no pet.).
Because it was not raised to the trial court, any complaint about age has been waived, per statutory fiat. We overrule this point of error.
(2) The Evidence Is Sufficient to Establish that Brownfield Was a Public Servant
S.C.'s next contention is that the evidence is insufficient because the State did not prove that Brownfield was a "school teacher," but instead proved only that she was a "teacher's aide." Thus, she argues, the petition's allegations were not met, and we should find the evidence insufficient.
The jury was charged to determine whether S.C. had committed delinquent conduct by committing assault on a public servant. See TEX. PENAL CODE ANN. § 22.01 (Vernon Supp.2006). Among other things, as presented to the jury, that includes "an officer, employee, or agent of government."
The petition alleges that S.C. caused bodily injury to
Cleda Brownfield, a school teacher, and a person said defendant knew was a public servant, while Cleda Brownfield was lawfully discharging an official duty, or in retaliation or on account of exercise of official power or performance of an official duty as a public servant, by pushing Cleda Brownfield.
On appeal, S.C. focuses on a single portion of the petition, the language describing Brownfield as a school teacher. S.C. argues that the evidence does not support a finding that Brownfield was a school teacher, and cites a series of criminal cases involving fatal variances between the allegation and the proof.[6]
This is an allegation of criminal action, the truth of which is determined by the fact-finder. Thus, we apply the analysis used in criminal cases to review alleged charge error, or claims that the evidence is insufficient to support a jury's determination.
In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.2000).
*841 In a factual sufficiency review, we also view all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong or manifestly unjust or against the great weight and preponderance of the evidence. Roberts v. State, 220 S.W.3d 521 (Tex.Crim.App. 2007); Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App.2006).
The Texas Court of Criminal Appeals has mandated that sufficiency of the evidence is to be analyzed under the hypothetically correct jury charge. Gharbi v. State, 131 S.W.3d 481, 483 (Tex.Crim.App. 2003) (allegation which is not statutory element or "an integral part of an essential element of the offense" need not be included in hypothetically correct jury charge); see Fuller v. State, 73 S.W.3d 250, 252 (Tex.Crim.App.2002) (allegation which is not statutory element need not be included in hypothetically correct jury charge); see also Gollihar v. State, 46 S.W.3d 243, 256 (Tex.Crim.App.2001).
A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. Hart v. State, 173 S.W.3d 131, 144 (Tex.App.-Texarkana 2005, no pet.) (quoting Gollihar, 46 S.W.3d at 246). "The widely-accepted rule, regardless of whether viewing variance as a sufficiency of the evidence problem or as a notice-related problem, is that a variance that is not prejudicial to a defendant's `substantial rights' is immaterial." Id. (quoting Gollihar, 46 S.W.3d at 247-48; and referencing Rojas v. State, 986 S.W.2d 241, 246 (Tex. Crim.App.1998)).
To determine whether a defendant's "substantial rights" have been prejudiced, we consider two questions: whether the indictment, as written, informed the defendant of the charge against him or her sufficiently to allow such defendant to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. See Dickey v. State, 189 S.W.3d 339, 345 (Tex.App.-Texarkana 2006, no pet.) (citing Gollihar, 46 S.W.3d at 248).
In this instance, the statute criminalizes assault on a public servant. It is not limited to assault on a school teacher. TEX. PENAL CODE ANN. § 22.01(b)(1). It is undisputed that Brownfield was a teacher's aide employed by the Paris Independent School District at the time of the altercation. A "public servant" is "a person elected, selected, appointed, employed, or otherwise designated as . . . an officer, employee, or agent of government." TEX. PEN.CODE ANN. § 1.07(a)(41)(A) (Vernon Supp.2006). Thus, the evidence shows that Brownfield was a public servant. See Moore v. State, 143 S.W.3d 305, 311 (Tex. App.-Waco 2004, pet. ref'd).
The petition clearly provides sufficient information for the defendant to prepare an adequate defense at trial. The State was not required to prove the more specific allegation, but only what was required by the hypothetically correct jury charge: that Brownfield was a public servant.
A number of courts have expressly answered the question by concluding that public school teachers fall within the broad definition of "public servant" provided by the current version of Section 1.07(a)(41)(A) of the Texas Penal Code. See In re J.P., 136 S.W.3d 629, 630 (Tex.2004) (juvenile assaulted public servant per Section 22.01(b)(1) by hitting and kicking public school teacher); Moore, 143 S.W.3d at 311 (school superintendent was "public servant" under Section 1.07(a)(41)(A)); In re F.C., No. 03-02-00463-CV, 2003 Tex. App. LEXIS 4709, at *10-11, 2003 WL *842 21282766, at *3 (Tex.App.-Austin June 5, 2005, no pet.) (mem. op., not designated for publication) (teacher at Dobie Middle School was "public servant" for purposes of Section 22.01(b)(1)); In re J.L.O., No. 03-01-00632-CV, 2002 Tex.App. LEXIS 5730, at *8-9 & n. 1, 2002 WL 1804951, at *3 (Tex.App.-Austin Aug.8, 2002, no pet.) (mem. op., not designated for publication) (education assistant at public school satisfied Texas Penal Code definition, which Legislature intentionally made broad "to extend the law's protection to all school employees"); In re B.M., 1 S.W.3d 204, 207 (Tex.App.-Tyler 1999, no pet.) (public servants include employees of independent school districts).
Accordingly, we conclude that Brownfield's undisputed testimony that she was a "teacher's aide" employed by the Paris Independent School District at Paris High School provided legally and factually sufficient evidence to establish this element of the offense. See In re L.M., 993 S.W.2d 276, 284 (Tex.App.-Austin 1999, pet. denied); In re P.N., No. 03-04-00751-CV, 2006 Tex.App. LEXIS 6878, 2006 WL 2190577 (Tex.App.-Austin Aug. 4, 2006, no pet.) (mem. op., not designated for publication).
(3) The Evidence Is Sufficient to Establish that Paris High School Is a Governmental Entity
In a corollary argument, S.C. contends that the State failed in proving that Paris High School was a governmental entity. The law clearly is that "an independent school district is an agency of the state." Barr v. Bernhard, 562 S.W.2d 844, 846 (Tex.1978); Guin v. State, 209 S.W.3d 682, 684 (Tex.App.-Texarkana 2006, no pet.); Zuniga v. Navarro & Assoc., 158 S.W.3d 663, 670 (Tex. App.-Corpus Christi 2005, pet. denied).[7] Although, except for Guin, the cited cases are generally connected with attempts to impose negligence liability on school districts, we see no reason to treat this type of situation any differently when acknowledging the underlying nature of an independent school district as a governmental entity.
We find this argument likewise to be without merit.
(4) Ineffective Assistance of Counsel Has Not Been Shown
A juvenile has a constitutional and statutory right to effective assistance of counsel in a juvenile adjudication proceeding. See In re R.D.B., 102 S.W.3d 798, 801 (Tex.App.-Fort Worth 2003, no pet.); In re K.J.O., 27 S.W.3d 340, 342 (Tex.App.-Dallas 2000, pet. denied); In re R.D.B., 20 S.W.3d 255, 258 (Tex.App.-Texarkana 2000, no pet.).
The effectiveness of counsel's representation in a juvenile proceeding is reviewed under the familiar, two-pronged Strickland v. Washington standard. 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); R.D.B., 20 S.W.3d at 258. Appellant must show that his or her counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. An allegation of ineffective assistance of counsel must be affirmatively demonstrated by the record. Thompson v. State, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999). In this case, unlike most, there was a hearing conducted by appellate counsel, Gary Waite, questioning trial counsel, S. Wesley Newell, in connection with S.C.'s motion for new trial. Accordingly, we *843 have a record providing evidence about a number of the arguments made on appeal.
Appellate counsel first contends that trial counsel was ineffective because he did not obtain, before trial, S.C.'s medical or school records or the services of a mental health provider to help "determine whether [S.C.] lacked substantial capacity to either appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of the law." It is also argued that trial counsel was inadequate because he did not "talk to his client to assess her mental condition."
This issue becomes important only if there is actually evidence that S.C. lacked "substantial capacity." It is clear from the record of the hearing on the motion for new trial that S.C. had a long and storied disciplinary history with the school, that she had difficulty controlling her behavior, and that she had been diagnosed with Attention Deficit, Hyperactivity Disorder (ADHD). Also, S.C.'s doctor, Martha J. Brown, who had declined to testify favorably for her, had diagnosed her with an anxiety disorder. There is, however, no evidence to show that any of those matters are such as would undermine S.C.'s culpability for her actions, to show any substantial or gross impairment of behavior or judgment, or to raise an issue of her capacity to stand trial.[8] No evidence suggests a defect that would provide a direct defense to a charge of assault. Even at the hearing on the motion for new trial, nothing showed that S.C.'s condition raised the lack of substantial capacity, requiring a different result at trial.[9]
Trial counsel testified at the hearing that he intentionally chose not to pursue those lines of investigation based on the responses from Brown, who explained that Brown would not be a good witness for S.C. Newell testified that he had originally intended to attempt to attack the mens rea component using Brown, but Brown told him that her testimony would hurt S.C.'s case. Newell testified that Brown's response caused him to change his trial strategy. Further, in a letter sent in connection with a request that S.C. be placed in her own home for teaching, Brown had explicitly refused to suggest that the school be required to provide home-bound teachers since S.C. could behave in structured environments.
Newell had enough information available to justify making a tactical decision to pursue other defensive theories instead of spending time, energy, and his client's money on a theory that showed little or no chance of success.
S.C. also argues that counsel was ineffective because he had not spent an adequate amount of time with his client *844 and with witnesses.[10] Newell's testimony shows that he had made trips from Dallas to Paris to meet with S.C. and her family, that he had spoken over the telephone to S.C.'s mother a number of times and to S.C. once regarding the case, that he had obtained a list of witnesses from the mother, including only S.C., classmates, and Brown, and that he spoke with four female classmates of S.C. before trial, three of whom testified.
Newell's testimony is somewhat inconsistent as to the classmates, but it appears that he had contacted them earlier by telephone about appearing at the trial. Then Newell contacted them just before trial and during breaks while the State presented its case before his portion of the case began about the incident. Newell pointed out, accurately, that the case came down to a swearing match between multiple adult teachers and administrators on one side, and the students on the other side, and that he had to deal with inconsistent stories told by those students, the only available defense witnesses. He also pointed out, again accurately, that the situation itself was not complex and that he had altered his strategy in an attempt to use the most effective theory available. This does not demonstrate ineffective assistance of counsel.
S.C. also contends that counsel was ineffective at voir dire because he did not question the jury panel about S.C.'s right not to testify, about whether the panelists had relatives or friends in law enforcement or knew the witnesses, about the burden of proof and reasonable doubt concepts, or about their familiarity with the case. S.C. also complains because counsel did not question the venire panel or discuss defenses.
The record of voir dire, however, contains considerable discussion about the presumption of innocence, about the State's burden of proof, and about the knowledge of the parties and witnesses. It is also apparent that the State had previously discussed the reasonable-doubt concept, S.C.'s constitutional right not to testify and not to have the failure to testify held against her, and the associated burden of proof. The State questioned the witnesses about their relationship with the school system, their familiarity with the respondent, and their familiarity with Brownfield or any of the State's other witnesses.
This is not a situation, like the one in Goodspeed,[11] where counsel asked no questions at all, or asked only questions that were irrelevant to the matters at hand. Counsel spent his time with the jurors on areas that he deemed important, and did not re-ask questions adequately covered by the State. We are not prepared to state that his conduct of voir dire was constitutionally inadequate. Appellate counsel also throws in a smorgasbord of other alleged shortcomings by trial counsel. He complains that trial counsel's unfamiliarity with juvenile law was apparent because he did not realize that the State's offer of two years in the TYC was not a possible sentence.[12] He complains that trial counsel *845 failed to object to the court's failure to admonish S.C. pursuant to Section 54.03 of the Texas Family Code, though failing to suggest how such a failure might have been harmful. He complains because trial counsel did not have a list of the State's witnesses in order to ask the panel if they knew any of them. The State, however, did question panel members about their familiarity with most of those witnesses. Appellate counsel complains that trial counsel did not adequately prepare for the disposition hearing, apparently because he did not verify that a social study was done and did not have experts available to testify about S.C.'s mental condition. There is no explanation of any of those contentions, nor any explanation of how harm might have ensued from the alleged shortcomings.
In evaluating the first prong of the Strickland inquiry, we presume counsel's competence; an appellant must rebut this presumption by proving that the challenged action was not sound trial strategy. Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (citing Strickland, 466 U.S. at 688-89, 104 S.Ct. 2052 (defendant must overcome presumption that, under the circumstances, the challenged action might be sound trial strategy)). Evidence was presented suggesting that the strategy used by counsel was logical, if ultimately ineffective. The evidence also shows that counsel contacted the potential witnesses, and spoke to them about their testimony. It is also apparent that the proof of the incident itself was not particularly complex or convoluted. We are not prepared to say that counsel's decisions were such as to constitute ineffective assistance of counsel.
Counsel's conduct of voir dire was not inadequate. Although any complaint about the "missing" admonishment must be preserved before its absence could be reviewed, it is apparent from S.C.'s actions and the conduct of the proceeding that all of the matters involved were fully known by S.C. There is no argument or explanation concerning any missing "social study," and no evidence suggests that any further actions concerning S.C.'s mental state would have been fruitful.
Even if all of the complained-of actions or inactions were indeed below the norms for competent counsel, nothing in this record suggests that, without those actions or inactions, this case would have had a different outcome. The point of error is overruled.
We affirm the judgment.
NOTES
[1] One of Brownfield's duties at the time of the altercation was to keep unauthorized students out of the school building before the bell rang for general classes at 8:30 a.m. The first bell rang at 8:00 a.m. At that time, authorized students could come in for tutorials and other specified purposes until 8:05 a.m., when the second bell rang. At that point, the doors were again closed until 8:30 a.m., when general admission began. Brownfield and other school personnel testified that S.C. initiated physical contact before 8:30 by pushing Brownfield. S.C. and two classmates testified that Brownfield initiated the contact. S.C. also stated that Mr. Fleming, a science teacher, pushed S.C. while stepping on her shoe string and that, as a result, she fell and stuck herself in the hand with a pencil she was carrying.
[2] After the trial court heard further evidence, it committed S.C. to the Texas Youth Commission (TYC) for an indeterminate sentence. See TEX. FAM.CODE ANN. § 54.04 (Vernon Supp. 2006).
[3] We note that, though numerous reports in the public media discuss S.C.'s case as being one involving issues of racial discrimination, no racial issues have been raised in this appeal.
[4] At oral argument, acknowledging that S.C. has now been released from TYC, counsel waived his arguments that the trial court abused its discretion at the disposition phase by committing her for an indeterminate sentence.
[5] Juvenile proceedings are unique. Although these proceedings are not handled in the criminal justice system and are considered to be civil proceedings, they are quasi-criminal in nature. In re M.A.F., 966 S.W.2d 448, 450 (Tex.1998); see TEX. FAM.CODE ANN. § 51.17 (Vernon Supp.2006). The terms used to describe juvenile proceedings are euphemisms that are parallel to criminal proceedings: the adjudication is the guilt/innocence trial, while the disposition is equivalent to a sentencing proceeding. See In re K.T., 107 S.W.3d 65, 67 (Tex.App.-San Antonio 2003, no pet.).

Juvenile delinquency proceedings are governed by the Texas Family Code. In re R.J.H., 79 S.W.3d 1, 6 (Tex.2002); In re M.D.G., 180 S.W.3d 747, 749 (Tex.App.-Eastland 2005, no pet.). Under applicable statutes and caselaw, civil and criminal rules apply at different stages of the same proceeding. Section 51.17 of the Texas Family Code provides that the Texas Rules of Civil Procedure shall apply, the Texas Code of Criminal Procedure and the applicable criminal caselaw shall govern the discovery process, and the Texas Rules of Evidence, as they apply to criminal cases, shall be used during the judicial proceeding. TEX. FAM.CODE ANN. § 51.17 (Vernon Supp. 2006). The burden of proof in an adjudication hearing is the criminal burden: beyond a reasonable doubt. TEX. FAM.CODE ANN. § 54.03(f) (Vernon Supp.2006). If the trier of fact determines the juvenile engaged in delinquent conduct, a separate disposition hearing is conducted after the adjudication hearing. TEX. FAM.CODE ANN. §§ 54.03(h), 54.04.
[6] See generally Weaver v. State, 551 S.W.2d 419 (Tex.Crim.App.1977) (Ruger, or Luger, pistol).
[7] See generally TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (Vernon Supp.2006) (governmental unit included any "school district").
[8] A child is not responsible for the conduct if as a result of mental illness or mental retardation he or she lacks substantial capacity either to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law. TEX. FAM.CODE ANN. § 55.51(a) (Vernon 2002). Section 55.51(b) states that on a motion by a party alleging that the child may not be responsible as a result of mental illness or retardation, the court shall order the child to be examined under Section 51.20, and obtain an expert opinion about whether the child is responsible. Section 51.20 allows a court to order a child examined by an expert to determine whether the child has a mental illness as defined by Section 571.003 of the Texas Health and Safety Code, or is mentally retarded.
[9] Mental illness is defined as an illness, disease, or condition-other than epilepsy, senility, alcoholism, or mental deficiency-that either substantially impairs a person's thought, perception of reality, emotional process, or judgment; or grossly impairs behavior as demonstrated by recent disturbed behavior. TEX. HEALTH & SAFETY CODE ANN. § 571.003(14) (Vernon Supp.2006).
[10] Compare K.J.O., 27 S.W.3d at 345, where the court concluded that counsel had wholly failed to investigate the facts and circumstances surrounding the appellant's alleged involvement in the underlying offense. The court went on to find a reasonable probability that, had appellant's counsel questioned the available witnesses, she would have been able to establish an alibi for the appellant on the night she was arrested, resulting in a different outcome at trial.
[11] Goodspeed v. State, 167 S.W.3d 899 (Tex. App.-Texarkana), rev'd, 187 S.W.3d 390 (Tex. Crim.App.2005).
[12] In their briefing and in oral argument, the parties have not fleshed out the merits of counsel's underlying proposition concerning viable sentencing alternatives, nor do we take a position on the merits of that proposition.