

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00217-CR

_____

KEVIN JOSEPH MCCONNELL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th Judicial District Court
Hopkins County, Texas
Trial Court No. 0820641

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM  OPINION

As the result of a domestic dispute which escalated to violence, Kevin Joseph McConnell was convicted by a Hopkins County jury for aggravated assault, committing the assault of Angela Williams[1] while using or exhibiting a deadly weapon (TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp. 2010)) with an affirmative deadly weapon finding (TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp. 2010). McConnell was sentenced to ten years' imprisonment plus a fine of $10,000.00, attorney's fees, and costs, but McConnell's sentence and fine were suspended and he was placed on community supervision for ten years. McConnell raises two issues on appeal, both of which challenge the sufficiency of the evidence. McConnell argues that the evidence is not sufficient for a rational juror to conclude, beyond a reasonable doubt, (1) that McConnell was guilty or (2) that McConnell used or exhibited a deadly weapon.

In the *Brooks* plurality opinion, the Texas Court of Criminal Appeals found "no meaningful distinction between the *Jackson v. Virginia*[2] legal-sufficiency standard and the *Clewis*[3] factual-sufficiency standard, and these two standards have become indistinguishable." *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (4-1-4 decision). Further, a proper application of the *Jackson v. Virginia* legal sufficiency standard is as exacting a standard as any factual sufficiency standard. *See id.* at 906. In a concurring opinion, Judge Cochran pointed out

---

[1]Williams had been McConnell's girlfriend for twelve years.

[2]*Jackson v. Virginia*, 443 U.S. 307 (1979).

[3]*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

2

that the United States Supreme Court has rejected a legal sufficiency test that requires a finding that "no evidence" supports the verdict because it affords inadequate protection against potential misapplication of the "reasonable doubt" standard in criminal cases. *Id.* at 916–17 (Cochran, J., concurring). Rather than meeting a mere "no evidence" test, legal sufficiency is judged not by the quantity of evidence, but by the quality of the evidence and the level of certainty it engenders in the fact-finder's mind. *Id.* at 917–18. We are directed to subject challenges to the sufficiency of the evidence to the hypothetically-correct jury charge analysis. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Under the hypothetically-correct jury charge,[4] the State was obligated to prove (1) that McConnell intentionally or knowingly threatened Williams with imminent bodily injury and (2) that he used or exhibited a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. §§ 22.01, 22.02 (Vernon Supp. 2010). The evidence supports a conclusion that the State met its burden.

On the night in question, Williams and her friend, Penny Pyron, had been on a shopping trip to Dallas and returned to the McConnell/Williams residence late at night. Williams woke

---

[4]A "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. The hypothetically-correct charge, however, "need not incorporate allegations that give rise to immaterial variances." *Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001). The hypothetically-correct jury charge must include both (1) allegations that form an integral part of an essential element of the offense, including allegations that are statutorily alternative manner and means and (2) material variances. *Mantooth v. State*, 269 S.W.3d 68, 74 (Tex. App.—Texarkana 2008, no pet.) (number of statute creating duty to register not integral part of essential element); *see Gollihar*, 46 S.W.3d at 256.

3

McConnell to request that he rise to hang a new shower curtain she had bought; McConnell refused to do so at that time. After sitting in the kitchen getting "madder and madder" because of McConnell's refusal, Williams returned to the bedroom and confronted McConnell. An argument ensued in the bedroom and Williams "punched [McConnell] in the head."[5] Williams admitted that she failed to disclose to the investigating police officer that she had struck McConnell. Williams (who was apparently not an extremely enthusiastic witness for the State) denied that McConnell had hit her and initially testified she could not remember what McConnell had said during the confrontation.

At some point during the argument, McConnell went to the kitchen and grabbed a stick used to keep the back door shut.[6] Although Williams denied that McConnell ever brandished the stick at her, Pyron testified that Williams was standing in the kitchen with her back to McConnell when McConnell swung the stick toward the back of her head. Pyron testified:

> A.      [By Pyron] . . . . He just came to the back of her head like he was going to hit her –
>
> Q.      [By the State]   Okay.
>
> A.      [By Pyron]   -- and stopped right there, but he didn't -- he didn't hit her with it.

---

[5]Pyron testified she remained in the kitchen while McConnell and Williams argued. Pyron admitted she did not have any personal knowledge concerning what occurred in the bedroom.

[6]Depending on the weather, the back door would sometimes not stay shut and the stick had been employed to prop the back door shut for at least four years.

At some point during the evening, McConnell used this same stick to prop the bedroom door shut to keep Williams out.[7]

According to Pyron, at some point during the argument, McConnell put his hands around Williams' neck and pinned Williams against the refrigerator. Pyron testified that McConnell was screaming at Williams, but Pyron did not remember what words McConnell used. Williams admitted (only after she was required by the State to refresh her memory of what she had told the police at the time of the incident by reference to the police report) that McConnell had put his hands around Williams' neck and threatened to kill her.[8] Williams later testified McConnell did not choke her.

McConnell's brief argues that Williams "testified that she lied to law enforcement about this incident on the night it allegedly occurred simply because she was angry with Appellant." Although Williams did testify that she called the police because she "was pissed," and she admitted that she failed to inform the police that she had hit McConnell, she did not testify she lied to the police. Rather, Williams testified that her statement to the police was true, albeit admitting she did not "include everything." McConnell also argues that Williams was intoxicated the night of the incident (which is quite true, Williams having testified that she had been drinking, had taken "two pills," and was intoxicated), damaging the ability of a listener to rely on her testimony.

---

[7]The doorknob to the bedroom was broken.

[8]At the time of trial, McConnell and Williams were engaged and still living together. The State was allowed to treat Williams as a hostile witness.

Williams' admission of intoxication, however, while providing the possibility that someone might discount her veracity, does not preclude a rational juror from believing her testimony. McConnell's brief includes the following argument, quoted verbatim:

> Considering the testimony in a light most favorable to the verdict negate [sic] the fact that the alleged victim was lying, nor that the alleged eye-witness did not witness events as alleged by the State. Such admissions by both witnesses causes reasonable doubt beyond mere conflicting testimony.

We have interpreted this argument to be a complaint that Pyron did not witness the events which occurred in the bedroom. McConnell does not further explain the phrase "as alleged by the State."[9]

We are not persuaded by McConnell's arguments. "The trier of fact is always free to selectively believe all or part of the testimony proffered and introduced by either side." *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998). The fact that Pyron did not observe the entire argument does not discredit her testimony recounting the events which she did observe. Although Williams testified she did not see the stick directed toward her and was not placed in fear for her life,[10] a rational juror could nevertheless have concluded that McConnell threatened

---

[9]McConnell does not argue there were any material variances between the indictment and the evidence presented at trial. A determination of whether a variance is material (i.e., prejudices a defendant's "substantial rights") requires consideration of two questions: 1) whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow such defendant to prepare an adequate defense at trial, and 2) whether prosecution under a deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *See In re S.C.*, 229 S.W.3d 837, 841 (Tex. App.—Texarkana 2007, pet. denied); *Brown v. State,* 159 S.W.3d 703, 709 (Tex. App.—Texarkana 2004, pet. ref'd). McConnell does not argue his substantial rights were prejudiced.

[10]We note there is no evidence that Williams was aware McConnell swung the stick at her head. Williams testified she told the police she did not see the stick. Pyron testified Williams had her back to McConnell. McConnell,

6

Williams with imminent bodily injury. The jury was presented with evidence that McConnell had threatened to kill Williams, had put his hands around Williams' throat, and had pinned Williams against the refrigerator. The jury can draw multiple reasonable inferences so long as each inference is supported by evidence presented at trial. *Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007). The jury could reasonably infer that any or all of these actions placed Williams in apprehension of imminent bodily injury. Jurors may infer intent from the defendant's acts, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The jury could also reasonably infer that McConnell committed these actions with the intent to cause apprehension of imminent bodily injury or with the knowledge such apprehension could result.

McConnell also argues that the evidence is insufficient to support the jury's conclusion that McConnell used or exhibited a deadly weapon. According to McConnell, "[t]he club exhibited at trial was not the same as the stick described at the scene, and could not be 'swung' in the manner described." The record contains conflicting evidence concerning whether the stick introduced into evidence at trial by the State was the same stick used or exhibited by McConnell. Williams denied that the State's exhibit was the same stick used to prop the back door shut. Although

though, does not argue the evidence is insufficient because he did not intend to cause apprehension of imminent bodily injury. *See Teeter v. State*, No. PD-1169-09, 2010 Tex. Crim. App. LEXIS 1206 (Tex. Crim. App. Sept. 22, 2010) (not designated for publication) ("[A] threat does not require a result--that a victim knew of a threat--but it does require proof that, by his conduct, a defendant intended to cause an apprehension of imminent bodily injury."); *see also Olivas v. State*, 203 S.W.3d 341, 346 (Tex. Crim. App. 2006). We emphasize that the issue of whether McConnell intended to cause apprehension of imminent bodily injury by swinging the stick was not raised for our review. Because we find the evidence to be sufficient regarding McConnell knowingly threatening another with imminent bodily injury under *Jackson* and the hypothetically-correct jury charge doctrine, we decline to address this unassigned issue.

7

Pyron positively identified the State's exhibit as the stick she had seen exhibited by McConnell, she also testified that the stick had been broken since the incident in question. The jury was entitled to believe Pyron's testimony over Williams' testimony. Further, although the State is required to establish that a deadly weapon was used or exhibited, it is not required to introduce the deadly weapon into evidence.

Under the Texas Penal Code, a "deadly weapon" is "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(17) (Vernon Supp. 2010). To "exhibit" a deadly weapon "it need only be consciously displayed" during the commission of the offense. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). Pyron testified that McConnell swung the stick at the back of Williams' head. The jury could reasonably conclude that when used in this manner, the stick was capable of causing death or serious bodily injury. *See Nash v. State*, 115 S.W.3d 136, 140 (Tex. App.—Texarkana 2003, pet. ref'd) (describing factors which may be considered). It was within the province of the jury to conclude McConnell used or exhibited a deadly weapon during the commission of the offense.

The evidence is sufficient. We affirm the trial court's judgment.


Bailey C. Moseley
Justice


8

Date Submitted:     January 6, 2011
Date Decided:      January 7, 2011

Do Not Publish