

# NUMBER 13-13-00353-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE MATTER OF J.M.S.M., A CHILD

**On appeal from the 357th District Court of Cameron County, Texas, sitting as a Juvenile Court.**

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Benavides**
**Memorandum Opinion by Justice Rodriguez**

The trial court ordered appellant J.M.S.M., a child, transferred from the Texas Juvenile Justice Division (TJJD) to the Institutional Division of the Texas Department of Criminal Justice (TDCJ) for the completion of his determinate sentence. *See* TEX. HUM. RES. CODE ANN. § 244.014 (West, Westlaw through 2013 3d C.S.). By two issues, J.M.S.M. contends that his sentence should be set aside because: (1) the trial court allowed evidence in violation of his right of confrontation; and (2) he received ineffective assistance of trial counsel. We affirm.

## I. BACKGROUND

### A. Procedural History

When he was sixteen years old, J.M.S.M. was adjudicated delinquent for the offense of engaging in delinquent conduct, namely knowingly and intentionally possessing, with intent to deliver, a controlled substance—cocaine in an amount by aggregate weight including adulterants and dilutants, of more than 400 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West, Westlaw through 2013 3d C.S.). The trial court committed J.M.S.M. to the TJJD for a determinate sentence of eight years, subject to transfer to the TDCJ for the completion of his determinate sentence. *See* TEX. FAM. CODE ANN. § 53.045 (West, Westlaw through 2013 3d C.S.). Before J.M.S.M. reached his nineteenth birthday, the State filed a motion seeking J.M.S.M.'s release from the TJJD and transfer to the TDCJ.

### B. The Transfer Hearing

On May 23, 2013, the trial court, sitting as a juvenile court, held J.M.S.M.'s transfer hearing.

#### 1. The State's Witness and Exhibits

The State called Leonard Cucolo as its witness. Cucolo testified that he was employed by the TJJD as a court liaison and that his principal responsibility was to provide the trial court with case files and summary reports on youths being considered for either parole or prison. Regarding his report on J.M.S.M., Cucolo testified as to J.M.S.M.'s age, the offense for which he was committed, when he was committed to TJJD, and the sentence he received. Cucolo also discussed J.M.S.M.'s participation at the Orientation

2

and Assessment Unit, his assessed needs, and where he was placed—the Evins Regional Juvenile Center—to address those needs. Regarding J.M.S.M.'s education, Cucolo testified that J.M.S.M. received eleven of twenty-two credits necessary for a high school diploma, performing inconsistently in his courses—doing well in some and failing others. According to Cucolo, J.M.S.M. did not pass all subject areas when he tested for a GED the preceding January. J.M.S.M. did complete the alcohol and drug treatment program, a moderate level aggressive retraining program, and the gang intervention curriculum. Cucolo then answered questions regarding the CoNextions Program, a five-stage program that manages and evaluates a youth's progress on a monthly cycle throughout his stay. The stages of the program build on one another and have different treatment objectives. Cucolo explained that between July 2011 and October 2012, J.M.S.M. advanced through the first three stages of the program. J.M.S.M. was promoted to stage four in October and had not yet been promoted to the final stage of the program. According to his review of the records, Cucolo testified that J.M.S.M. was retained at stage four every month for the past seven months because of "a variety of inconsistent effort on [his] individual case plan, inconsistent effort in behavior, and maintaining behavior."

Cucolo testified that J.M.S.M. had thirty-eight documented incidents of misconduct since being committed to TJJD, thirty-five of which were security referrals (two self-referrals) and seventeen of which resulted in actual placements in the security unit. He explained that the majority of the incidents were for disruption of the program—for example, not participating in the program or not following staff instructions. But

3

according to Cucolo, J.M.S.M. had a variety of major rule violations over time, including tattooing, fleeing apprehension, vandalism, assaults, fighting, and threatening staff and other youths. Cucolo testified that J.M.S.M. "has been engaging in a lot of delinquent conduct that he was engaging in prior to his commitment up until a couple of months ago, even last month. So this has really kind of indicated to us that he is just not parole ready."

According to Cucolo, if a youth has engaged in three or more major rule violations, an informal (level 2) hearing is held, and if those violations are found to be true, the youth can be sanctioned. J.M.S.M.'s last level 2 hearing was in April 2013 and was for fighting. Cucolo explained that this occurred after J.M.S.M. had completed the aggression replacement therapy and the gang intervention curriculum. Cucolo continued,

> And with our criteria when we look at youth for return to court, if the youth has engaged in three or more major rule violations that's been confirmed through a level 2 hearing, then they're meeting the criteria for transfer. [J.M.S.M.] has five. He has multiple rule violations that he's engaged in. And as a result of that, that's pretty much why we're kind of making the recommendation we are today.

When asked what the TJJD was recommending for J.M.S.M., Cucolo responded as follows:

> Well, we're recommending that [J.M.S.M.] be transferred to the Institutional Division of the Texas Department of Criminal Justice for the remainder of his sentence . . . because of what we just talked about, that he's not ready to be released to parole. He's having difficulty—even up until now—following even the basic rules, following staff instructions. And that's within a highly structured setting with staff providing the necessary supervision for him. He's engaged in several new offenses while he's been confined. He has had the benefit of multiple interventions. And they have not really impeded his behavior. And he has not reduced, we believe, his risk to the community if he is released.

On cross-examination, Cucolo testified that J.M.S.M. did not have a relationship

4

with his mother, who had returned to Mexico. He did not know about any relationship J.M.S.M. had with his three older siblings or his father, who, according to defense counsel, had died. And as summarized by J.M.S.M. on appeal, on cross-examination Cucolo also testified as follows: (1) he was aware of J.M.S.M.'s previous delinquent history; (2) in preparing his report, he reviewed written documentation submitted in March 2013 by J.M.S.M.'s school, including, among others, psychological evaluations, behavior summaries, and academic assessments by staff; (3) the referenced violations could be considered misleading because they involved only one "probation"; and (4) in preparing his report, he did not speak to J.M.S.M., his mother, case manager, teachers, or uncle. Cucolo also explained that he had no personal knowledge of any of J.M.S.M.'s incidents of misconduct and had to rely on the reports of other staff and that he could not identify which events were assaults and which were fights. Cucolo also agreed that in the 700 days that J.M.S.M. had been at the TJJD, he only had thirty-eight incidents of misbehavior.

Without objection, the trial court admitted Cucolo's April 22, 2013 report as State's Exhibit 1. Case Manager III Ismelda Huerta prepared a second report sometime after April 2013. Huerta's report summarized J.M.S.M.'s behavior over the preceding ninety days. This second report provided information that was consistent with Exhibit 1 and Cucolo's testimony. The trial court admitted Huerta's behavior summary as State's Exhibit 2.

### 2. J.M.S.M.'s Witnesses and Exhibits

J.M.S.M. called Esther Olivia Castillo and Alfredo Yanez to testify on his behalf. Castillo, J.M.S.M.'s aunt, testified that she was willing to house and assist J.M.S.M. if paroled. Yanez testified that he was prepared to offer J.M.S.M. a job. Through these witnesses, the trial court admitted (1) two letters of reference from J.M.S.M.'s teachers; (2) one letter of reference from a juvenile correction officer; (3) a participation ribbon in volleyball; and (4) a ribbon and a certificate recognizing his participation in the Relay for Life Run.

## C.  Transfer Order and Appeal

At the conclusion of the hearing, the trial court ordered J.M.S.M. transferred to TDCJ for completion of his original sentence. *See* TEX. HUM. RES. CODE ANN. §§ 244.014, 244.151(c) (West, Westlaw through 2013 3d C.S.); TEX. FAM. CODE ANN. § 54.11(i)(2) (West, Westlaw through 2013 3d C.S.). J.M.S.M. appeals from the trial court's transfer order. *See* TEX. FAM. CODE ANN. § 56.01(c)(2) (West, Westlaw through 2013 3d C.S.).

## II.  STANDARD OF REVIEW

We review a trial court's decision to transfer a juvenile from TJJD to TDCJ for an abuse of discretion. *In re D.L.*, 198 S.W.3d 228, 229 (Tex. App.—San Antonio 2006, pet. denied); *In re J.L.C.,* 160 S.W.3d 312, 313 (Tex. App.—Dallas 2005, no pet.). In determining whether the trial court abused its discretion, we review the entire record to determine if the trial court acted without reference to any guiding principles or rules. *In re D.L.*, 198 S.W.3d at 229; *In re J.L.C.*, 160 S.W.3d at 313. We do not substitute our discretion and reverse only if the trial court acted in an unreasonable or arbitrary manner.

*In re T.D.H.*, 971 S.W.2d 606, 610 (Tex. App.—Dallas 1998, no pet.).

## III. RIGHT OF CONFRONTATION

By his first issue, J.M.S.M. contends that the trial court erred in allowing Cucolo to testify to records that were testimonial in nature. He asserts "the State introduced this evidence in violation of the Confrontation Clause" when Cucolo "testified to records pertaining to conduct of [J.M.S.M.] to which he had no personal knowledge and was testimonial in nature because it presented the impressions contained in the reports." He also complains of evidence of other crimes, wrongs, or acts by J.M.S.M. that the State offered, apparently through Cucolo's report or his testimony. Finally, J.M.S.M. asserts that the evidence is barred by the hearsay rule.

Section 54.11 of the Texas Family Code governs release or transfer proceedings involving juveniles. *See* TEX. FAM. CODE ANN. § 54.11. And at a transfer hearing, "the court may consider written reports from probation officers, professional court employees, professional consultants, or employees of the [TJJD], in addition to the testimony of witnesses." *Id.* § 54.11(d); *In re F.D.*, 245 S.W.3d 110, 113 (Tex. App.—Dallas 2008, no pet.). The transfer hearing is a "second chance hearing" after a child, such as J.M.S.M., has already been sentenced to a determinate number of years. *In re F.D.*, 245 S.W.2d at 113. It is not part of the guilt/innocence determination and need not meet the extensive due process requirements of an actual trial. *Id.* (explaining that a juvenile has no right of confrontation at a transfer hearing because it is dispositional rather than adjudicative in nature); *In re D.S.*, 921 S.W.2d 383, 387 (Tex. App.—Corpus Christi 1996, writ dism'd w.o.j.).

7

The trial court considered the written report prepared by an employee of the TJJD and heard Cucolo's testimony. *See* TEX. FAM. CODE ANN. § 54.11(d); *In re F.D.*, 245 S.W.3d at 113. Cucolo testified at the transfer hearing. He testified as a TJJD employee and described himself as its court liaison who provides trial courts with case files and summary reports on youths being considered for either parole or prison. Cucolo answered questions about information that was contained in his written report. The trial court also considered Huerta's behavior summary, a second report that provided similar information.

Because the legislature has determined that such evidence may be considered in transfer hearings, the trial court acted with reference to guiding principles or rules. *See In re D.L.*, 198 S.W.3d at 229; *In re J.L.C.*, 160 S.W.3d at 313. Having reviewed the entire record, we conclude the trial court did not abuse its discretion when it allowed Cucolo to testify and when it admitted the reports. *See In re S.M.*, 207 S.W.3d 421, 424–25 (Tex. App.—Fort Worth 2006, pet. denied); *In re D.L.*, 198 S.W.3d at 230. We overrule J.M.S.M.'s first issue.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, J.M.S.M. argues that his trial counsel rendered ineffective assistance because she "never properly objected to evidence being offered in violation of the right to confrontation." A juvenile has a constitutional and statutory right to the effective assistance of counsel in a juvenile proceeding. *See In re K.J.O.*, 27 S.W.3d 340, 342 (Tex. App.—Dallas 2000, pet. denied). We review the effectiveness of counsel's representation in a juvenile proceeding under *Strickland v. Washington*. 466

8

U.S. 668, 687–88 (1984); *see In re K.J.O.*, 27 S.W.3d at 342. J.M.S.M. must show his counsel's performance was deficient and that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. This means J.M.S.M. must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *See id.*; *see also In re R.D.B.*, 20 S.W.3d 255, 258 (Tex. App.—Texarkana 2000, no pet.).

Because a juvenile has no right to confrontation at a transfer hearing, *see In re F.D.*, 245 S.W.3d at 113, he cannot show that counsel's performance was deficient or that, but for any deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687; *see also In re R.D.B.*, 20 S.W.3d at 258. We overrule J.M.S.M.'s second issue.

## V. CONCLUSION

We affirm the trial court's order of transfer.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 2nd
day of October, 2014.

9