Oscar PEREZ, Jr., Appellant

v.

The STATE of Texas, Appellee.

No. 14–07–00414–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 11, 2008.

Discretionary Review Granted Sept. 23, 2009.

Rehearing Overruled March 5, 2009.

---

**31.** *Id.*

Tommy James Stickler, Alvin, for Appellant.

David Ashley Dowdy, Angleton, for Appellee.

Panel consists of Justices ANDERSON, FROST, and Senior Justice HUDSON.*

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

A jury found appellant, Oscar Perez, Jr., guilty of aggravated robbery. *See* Tex. Penal Code Ann. §§ 29.02, 29.03 (Vernon 2003). The trial court assessed appellant's punishment at thirty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In his sole point of error, appellant contends he received ineffective assistance of counsel. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 30, 2005, appellant and Marcus Antonio Tavira, each armed with a knife, kicked in the door to Maria Rangel's

---

* Senior Justice J. Harvey Hudson sitting by assignment.

home and committed robbery. Both men wore handkerchiefs around their faces, but Mr. Tavira's handkerchief slipped down during the course of the robbery, thereby exposing his face. Maria identified Mr. Tavira, but she could not identify appellant because she never saw his face and did not pay attention to his body. Maria's son Ernesto, who was thirteen at the time of the robbery, recognized both appellant and Mr. Tavira as the offenders. Maria and Ernesto disagreed whether the robbery occurred about 8:00 p.m. or 10:00 p.m., but they both agreed that it lasted about ten minutes total.

At trial, Maria, Ernesto, and the officer who investigated the scene of the robbery testified for the State. The defense did not present any witnesses or other evidence.

The jury found appellant guilty of aggravated robbery, and the trial court sentenced him to thirty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. After the trial, appellant's trial counsel, Mark Racer, filed a motion to withdraw, and the court appointed appellant new counsel. Appellant filed a motion for new trial alleging, among other things, that he received ineffective assistance of counsel at trial. Specifically, appellant alleged Mr. Racer failed to (1) interview and present an alibi witness or (2) do any meaningful preparation or investigation for trial. At the request of appellant's new counsel, the court appointed an investigator to speak with appellant regarding Mr. Racer and to investigate and interview potential witnesses. The investigator interviewed appellant's mother, his sister, and two alibi witnesses.

In response to appellant's motion for new trial, the trial court held a hearing during which appellant, Mr. Racer, the State's attorney, the investigator, appellant's mother, and an alibi witness testified.

Mr. Racer testified that from the time the court administrator appointed him to defend appellant, he understood appellant was charged with aggravated robbery, and that it was an habitual offender first-degree felony case. Appellant testified that prior to trial, Mr. Racer visited him only twice while he was in jail. In fact, on his fee voucher, Mr. Racer only recorded these two visits. Mr. Racer testified his notes revealed one additional meeting, and he alleged he met with appellant several other times. However, he has no record of those meetings. The only preparation for trial Mr. Racer recorded on his fee voucher is an hour and a half the weekend before trial began.

Appellant testified he wrote several letters to the court administrator stating his attorney was not visiting him, and Mr. Racer testified he received a letter from appellant in which appellant complained Mr. Racer would not comply with his requests or even respond to him. Appellant's mother testified she called Mr. Racer several times on his office phone and his cell phone with questions about the case but he did not answer. She further testified she began calling from an un-recognized number, at which point he answered her calls and stated he would call her back when he had information for her concerning the case. She testified, however, the only time Mr. Racer called her back was during the trial to ask for the number of an alibi witness. Appellant's mother further testified Mr. Racer did not tell her the dates of any hearings or of the trial.

Mr. Racer testified appellant told him about Christina Pereda, an alibi witness, during their first meeting, which was a year and a half before trial. According to Mr. Racer, he called Ms. Pereda on several occasions, but she never returned his calls.

Ms. Pereda, however, testified she never received any phone calls, messages, or letters from Mr. Racer. She further testified she did not even know who Mr. Racer was. The only attempt to contact Ms. Pereda that Mr. Racer noted in his file was a phone call on the day trial began. Mr. Racer testified he never visited the witness's home, never moved for a continuance to interview the witness, and never subpoenaed the witness.

Mr. Racer testified that as a court appointed attorney, he understood he had a duty to investigate. Despite this duty, he did not interview Ms. Pereda, and he did not investigate whether there were any other possible witnesses. At no point did Mr. Racer ask the court to appoint an investigator to contact Ms. Pereda or to determine whether there were any other witnesses. Mr. Racer testified he did not ask for an investigator because he could not get in contact with Ms. Pereda and because appellant did not state a specific event that he and the witness attended at the time of the robbery.

At the hearing, Ms. Pereda testified she did not personally know appellant's whereabouts the night of the robbery, but she stated that Roselie Padilla might know. She further testified if Mr. Racer had contacted her before trial, she would have provided him this information.

Ms. Padilla did not attend the hearing, but she provided an affidavit in which she testified she lived with appellant in a small house along with several other people, including Ms. Pereda. She did not provide a specific event that she and appellant attended the night of the robbery, rather she only testified generally that appellant was always home about 10:00 p.m., and the week of the robbery was no different.

At the hearing, appellant testified Mr. Tavira, the co-defendant, would have provided favorable testimony. The record re-veals Mr. Tavira accepted a plea bargain, which required him to waive all appeals before appellant's trial. Mr. Racer testified he was unaware of the plea bargain and assumed Mr. Tavira's case was still pending; therefore, he made no attempts to interview Mr. Tavira.

The trial court denied appellant's motion for new trial, and this appeal followed.

## DISCUSSION

In his single issue on appeal, appellant argues he received ineffective assistance of counsel at trial because his trial counsel failed to (1) interview and present an alibi witness or (2) do any meaningful preparation or investigation for trial. Therefore, appellant contends the trial court erred in denying his motion for new trial.

## I. Standard of Review

### A. Motion for New Trial

We review the denial of a motion for new trial for an abuse of discretion. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App. 1995). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather it is a question of whether the trial court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse. *State v. Herndon*, 215 S.W.3d 901, 907–08 (Tex.Crim.App.2007). We do not substitute our judgment for that of the trial court. *Lewis*, 911 S.W.2d at 7. We review the evidence in the light most favorable to the trial court's ruling and presume that all reasonable findings that could have been made against the losing party were so made. *Quinn v. State*, 958 S.W.2d 395, 402 (Tex.Crim.App.1997).

Only when no reasonable view of the record could support the trial court's ruling do we conclude the trial court abused its discretion by denying the motion for new trial. *Holden v. State*, 201 S.W.3d 761, 763 (Tex.Crim.App.2006).

### B. Ineffective Assistance of Counsel

In reviewing claims of ineffective assistance of counsel, we apply a two-prong test. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim.App.2005) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To establish ineffective assistance of counsel, appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Id.* (citing *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim.App.2001).

An accused is entitled to reasonably effective assistance of counsel. *King v. State*, 649 S.W.2d 42, 44 (Tex.Crim.App. 1983). When evaluating a claim of ineffective assistance, we look to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). There is a strong presumption that counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Salinas*, 163 S.W.3d at 740; *Stults v. State*, 23 S.W.3d 198, 208 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. When determining the validity of an ineffective assistance of counsel claim, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim. App.1984). When the record is silent as to the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation. *Stults*, 23 S.W.3d at 208. Absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002).

## II. Appellant's Trial Counsel Was Not Ineffective

### A. Appellant's Trial Counsel Was Deficient

A criminal defense lawyer has a duty to make an independent investigation of the facts of a case, which includes seeking out and interviewing potential witnesses. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App.1990). A breech of the duty to investigate may result in a finding of ineffective assistance "where the result is that any viable defense available to the accused is not advanced." *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex.Crim. App.1982). In defining the duty to investigate, the United States Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066.

Appellant argues he received ineffective assistance of counsel at trial because his trial counsel, Mr. Racer, failed to (1) interview and present an alibi witness or (2) do any meaningful preparation or investigation for trial. We address these two arguments simultaneously because adequately preparing and investigating for trial includes, among other things, interviewing and presenting witnesses. *See Ex parte Welborn*, 785 S.W.2d at 393.

At the hearing on appellant's motion for new trial, Mr. Racer testified that, from the time the court administrator appointed him to defend appellant, he understood appellant was charged with aggravated robbery and this would be an habitual offender first-degree felony case. The record demonstrates Mr. Racer met with appellant only two or three times before trial. Appellant testified he wrote several letters to the court administrator complaining Mr. Racer was not visiting him, and Mr. Racer testified he received letters to this effect. Appellant's mother testified she unsuccessfully tried to contact Mr. Racer on his office phone and his cell phone and was only able to reach him when she called from an un-recognized number. She testified when she did reach Mr. Racer, he told her he had no pertinent information but he would call her when he did. She also testified he did not tell her the dates of any hearings or of the trial, and the only time he called her was to ask for the number of an alibi witness during trial.

Mr. Racer testified that, as a court appointed attorney, he understood he had a duty to investigate. Nevertheless, Mr. Racer interviewed no witnesses before trial and he never asked the court to appoint an investigator to interview witnesses or search for potential witnesses.

Mr. Racer testified appellant told him about Ms. Pereda during their first meeting. Mr. Racer had a year and a half to pursue this witness before trial, but his file indicated his only attempt to contact this witness was on the first day of trial. According to Mr. Racer, he made other attempts to contact Ms. Pereda, which were not recorded in his file; however, he testified he never visited her home, he never moved for a continuance to interview her, and he never subpoenaed her. At the hearing, Ms. Pereda testified she never received any phone calls, messages, or letters from Mr. Racer. Mr. Racer's reasons for not asking the court for an investigator were that he could not get in touch with Ms. Pereda and appellant's alibi was non-specific in nature.

Furthermore, Mr. Racer made the assumption Mr. Tavira's case was still pending, rather than inquiring about it. Therefore, Mr. Racer remained unaware of Mr. Tavira's plea bargain, and he made no attempts to interview him.

The record reveals Mr. Racer prepared only an hour and a half the weekend before trial began. The record also reveals Mr. Racer did not present any witnesses at trial and he did not put forth any other evidence.

Prior to the hearing, and at the request of appellant's newly appointed counsel, the court appointed an investigator to speak with appellant regarding Mr. Racer and to investigate and interview potential witnesses. At the hearing, the investigator testified that he interviewed appellant's mother, appellant's sister, and the two alibi witnesses, Ms. Pereda and Ms. Padilla. Ms. Pereda gave the investigator Ms. Padilla's name, who provided the investigator with a sworn affidavit.

The investigator testified that, in a three week time period, he spent thirty to forty hours investigating appellant's case. The investigator further testified from his ex-

perience in criminal investigations, thirty to forty hours is the minimum acceptable amount of preparation for this type of case, and a lawyer who did not conduct this type of investigation, or hire an investigator to do so, would not be reasonable.

Based on the totality of Mr. Racer's actions, or lack thereof, and the particular circumstances of this case, we find Mr. Racer's decisions were not reasonably professional or motivated by sound trial strategy. *See Salinas,* 163 S.W.3d at 740 (citing *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65); *Stults,* 23 S.W.3d at 208. We conclude Mr. Racer's representation was deficient in that it fell below the standard of prevailing professional norms. *See Salinas,* 163 S.W.3d at 740 (citing *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65); *Thompson,* 9 S.W.3d at 813; *see also Butler v. State,* 716 S.W.2d 48, 56 (Tex.Crim.App.1986) (holding counsel's representation deficient where counsel failed to seek out and interview an alibi witness as well as two eyewitnesses who could testify to misidentification); *Shelton v. State,* 841 S.W.2d 526, 527 (Tex.App.-Fort Worth 1992, no pet.) (holding counsel's assistance deficient where counsel failed to present available testimony in support of defendant's alibi). Thus, appellant has met his burden under the first prong of our analysis. *See Salinas,* 163 S.W.3d at 740 (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064).

**B. Appellant Was Not Prejudiced by Counsel's Deficiency**

■ Trial counsel's failure to call witnesses at the guilt-innocence stage is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony. *King,* 649 S.W.2d at 44. Thus, we must determine whether appellant would have benefitted from the absent witnesses' testimonies had Mr. Racer adequately prepared for trial by

investigating, interviewing, and presenting these witnesses. *See id.*

At the hearing, Ms. Pereda testified she did not personally know of appellant's whereabouts the night of the robbery but she would have provided Ms. Padilla's name because she believed Ms. Padilla might have known. She further testified that had Mr. Racer contacted her, she would have provided him with this information. Because her testimony does not reveal a specific alibi, but rather leads to a second witness, we must consider Ms. Padilla's testimony to determine whether Mr. Racer's failure to act prejudiced appellant.

In her affidavit, Ms. Padilla stated she lived with appellant in a small house along with several other people, including Ms. Pereda, at the time of the robbery. However, Ms. Padilla's affidavit did not provide a specific event that she and appellant attended the night of the robbery. Rather, Ms. Padilla testified generally that appellant was always home by about 10:00 p.m., and the week of the robbery was no different. Ms. Padilla failed to provide a specific date or event; thus, her testimony did not directly conflict with the testimony provided by the State.

For support, appellant cites *Shelton v. State.* In *Shelton,* the defendant was indicted for sexual assault of a minor. *Shelton,* 841 S.W.2d at 526. At trial, the defendant's counsel failed to call a witness whose testimony "completely contradicted" the only evidence supporting the State's case. *Id.* The complainant testified he and the defendant slept together in the defendant's bedroom the entire night of the offense; however, the defendant's alibi witness, if given the opportunity, would have testified that on the night of the offense, she spent the night at the defendant's home and the defendant was away from home the entire night. *Id.* at 526–27.

This is not the situation we have here. In the instant case, neither Ms. Pereda nor Ms. Padilla specified, in detail, the defendant's actions or the time he was home on the date of the robbery. Therefore, neither witnesses' testimony completely contradicted evidence provided by the State. *See id.* at 526.[1] Assuming both of these witnesses would have been available to testify at trial, the record does not establish appellant would have benefitted from their testimony. *See King*, 649 S.W.2d at 44.

Additionally, appellant testified at the hearing that Mr. Tavira would provide favorable testimony. Nevertheless, appellant did not present this witness or a sworn affidavit authored by this witness. We cannot speculate what this witness might have said.

Accordingly, while we agree Mr. Racer's assistance was deficient, based on our review of the record as a whole, we find appellant failed to show a reasonable probability that, but for the alleged deficiencies of his trial counsel, the result of the trial would have been different. *See Salinas*, 163 S.W.3d at 740 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). Thus, appellant has not shown he was prejudiced by Mr. Racer's failure to adequately prepare or investigate for trial, failure to move for a continuance to investigate witnesses, failure to hire an investigator to investigate witnesses, or failure to subpoena witnesses. *See id.* (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). Therefore, appellant has not met his burden under the second prong of our analysis.

*See id.* (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).

Because we have determined appellant did not receive ineffective assistance of counsel, we further hold that the trial court did not abuse its discretion when it denied his motion for new trial. Accordingly, we overrule appellant's single issue on appeal.

## CONCLUSION

Having overruled Appellant's single issue on appeal, we affirm the judgment of the trial court.

KEM THOMPSON FROST, Justice, dissenting.

The court correctly determines that appellant's attorney's actions, in failing to interview and present a potential alibi witness, fell below the prevailing professional standards as required in the first prong of the *Strickland* test. Contrary to the majority's conclusion, however, the second prong of *Strickland* is satisfied.

Under the second prong of *Strickland*, an appellant must show by a preponderance of the evidence that there is a reasonable probability that, but for his trial counsel's deficient performance, the result of the proceeding would have been different. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim.App.2005). An attorney has the professional obligation to present all available testimony and other evidence to support a client's defense. *State v. Thomas*, 768 S.W.2d 335, 336 (Tex.App.-Houston [14th Dist.] 1989, no pet.). A defendant's

---

1. Additionally, appellant cites *Butler v. State*, 716 S.W.2d 48 (Tex.Crim.App.1986), for support. In *Butler*, the court found the defendant's trial counsel rendered ineffective assistance where he failed to investigate and call an alibi witness and two eyewitnesses who could testify that someone other than the defendant was actually the robber. *Id.* at 56.

The alibi witness could testify, in detail, the defendant was doing something else at the time of the offense. *Id.* at 51. This too is not the case we have here. In the instant case, the alibi witnesses could not specify, in detail, the defendant's actions or the time that he was home on the date of the robbery.

trial counsel has the responsibility to seek out and interview potential witnesses, and failure to do so supports a claim for ineffective assistance of counsel if any viable defense available to the defendant is not advanced. *Id.* Though the decision to call a witness to testify is generally a matter of trial strategy, the failure to interview a witness is deemed ineffective assistance of counsel when such inaction precludes an accused from advancing a viable defense. *Id.* A conviction will not be reversed for failure to investigate unless the appellant's only viable defense available is not advanced and reasonable probability exists that but for the failure, the result of the proceeding would have been different. *See McFarland v. State,* 928 S.W.2d 482, 501 (Tex.Crim.App.1996).

According to the record from the hearing on appellant's motion for new trial, appellant's attorney learned in his first meeting with appellant that Christina Pereda could offer alibi evidence as to appellant's whereabouts on the night in question. Appellant confirmed this information and testified that he gave his attorney Pereda's name and phone number at this meeting. The attorney testified that he called Pereda several times before trial, but she did not return his calls. The attorney acknowledged, however, that his file reflects only a single call to Pereda on the day of trial. The attorney testified that he did not interview any witnesses prior to trial nor did he call any witnesses to testify. He explained he did not pursue the alibi further because Pereda did not return his calls. The attorney did not ask for a court-appointed investigator to investigate the alibi nor did he file a motion for continuance on this basis. He did not subpoena any witnesses for trial.

At the hearing, Pereda testified that appellant's trial counsel did not contact her by phone or letter. Pereda confirmed that, at the time of the offense, appellant lived with her in a home she shared with others. Pereda testified that a roommate, Roselie Padilla, could confirm whether appellant was at the home on the night in question. Pereda testified that she would have provided this information and Padilla's contact information to appellant's attorney had she been contacted before trial.

An investigator was appointed by the trial court to investigate appellant's claims for the motion for new trial. At the hearing on appellant's motion for new trial, the investigator testified that with information he learned from Pereda, he pursued Padilla to investigate the potential alibi evidence. By sworn affidavit, Padilla indicated that for two months she shared a home with appellant and Pereda. During this time, appellant slept on a couch in the living room, and Padilla slept on the floor beside the couch with her son. Padilla explained that they went to bed at about 10:00 p.m. She was certain appellant was sleeping on the couch every night during the week in which the offense occurred, and that there was no night that appellant was absent nor any night that he left. She indicated that appellant's attorney did not contact her prior to trial.

Testimony at trial suggested that the offense occurred at around 10:00 p.m. Padilla's affidavit provides that she and appellant went to bed at around that time every night that week. The evidence in this case establishes that appellant's only viable defense was an alibi defense, and this defense was not advanced due to appellant's trial counsel's failure to interview and investigate alibi witnesses. *See In re K.J.O.,* 27 S.W.3d 340, 345 (Tex.App.-Dallas 2000, pet. denied) (concluding attorney wholly failed to investigate the appellant's involvement in offense and reasonable probability existed that had appellant's trial counsel questioned the available wit-

nesses, appellant could have established an alibi and the result of the proceeding would have been different); *Thomas,* 768 S.W.2d at 337 (holding claim for ineffective assistance of counsel was supported by attorney's failure to call witnesses for defense of consent in case of aggravated sexual assault). On this record, there is a reasonable probability that but for appellant's trial counsel's deficient performance, the result of the proceeding would have been different. Thus, the failure to investigate prejudiced appellant's defense.

The majority distinguishes the facts of this case from those of *Butler v. State,* 716 S.W.2d 48 (Tex.Crim.App.1986), on the basis that the alibi witness in *Butler* could testify in detail that the defendant was doing something else at the time of the offense. The facts in this case are strikingly similar to those of *Butler* in which appellant's trial counsel was faced with a positive identification of appellant by a single complainant but no physical evidence. *Butler,* 716 S.W.2d at 55. As in *Butler,* the logical way to refute the complainant's positive identification would be to produce witnesses to say that appellant was not the perpetrator because appellant was seen elsewhere at the time of the robbery. *See id.* Like the defense counsel in *Butler,* appellant's defense counsel in this case, when faced with the necessity of disproving the positive identification, sought no potential witnesses and did not interview the potential witnesses whose names he knew. *See id.* Though the trial counsel in this case indicated fear that upon cross-examination the alibi witnesses would be impeached for bias or motive, fear of having a witness impeached does not justify a failure to investigate by interviewing witnesses. *See id.* at 56.

The *Butler* court concluded that the appellant was prejudiced by the trial counsel's failure to interview and call alibi witnesses, but not on the basis of the amount of detail in the alibi witness's testimony, as the majority indicates. *See id.* The *Butler* court found prejudice because "[t]he evidence the jury did *not* hear due to trial counsel's failure to investigate consisted of the sworn testimony of . . . a third witness that appellant was somewhere else at the exact time of the robbery." *Id.* (emphasis in original). According to the *Butler* court, alibi testimony at the hearing on the motion for new trial in that case consisted of "far more substance to appellant's alibi defense than was presented to the jury. [The alibi witness] testified that she had seen appellant in the apartment at the time of the robbery, and that she would have testified to that effect at trial." *Id.* at 55. The facts of the case at hand are not distinguishable because, as in *Butler,* the evidence the jury did not hear at trial was from Padilla that appellant was somewhere else at a time when one complainant, Ernesto, alleged the robbery occurred. *See id.* at 56. Such testimony had far more substance to appellant's alibi defense than what was presented to the jury. *See id.* at 55. As stated in *Butler,* "[w]e are concerned here, however, not with counsel's failure to present the testimony of these witnesses, but with his decision not to perform the investigation that would have uncovered the testimony." *Id.* at 56. Appellant's trial counsel had no idea the evidence even existed because he did not investigate the alibi and the contact information appellant gave him at their first meeting. This failure to investigate resulted in no alibi evidence being presented to the jury at all. *See id.*

Given the information from both Pereda and Padilla, appellant could have established an alibi defense for the jury's consideration. *See In re K.J.O.,* 27 S.W.3d at 345. The attorney's failure to advance the one defense apparently available to appellant made the attorney's assistance ineffective. *See Shelton v. State,* 841 S.W.2d 526,

527 (Tex.App.-Fort Worth 1992, no pet.). Reasonable probability exists that with this information, the result of the proceeding would have been different. *See id.* Therefore, the appellant's trial counsel's deficient performance prejudiced appellant's defense. *See Thomas,* 768 S.W.2d at 337.

Because appellant was prejudiced in his defense by not being able to present evidence of an alibi on the night of the robbery, appellant has been denied effective assistance of counsel. Therefore, when appellant presented this complaint in his motion for new trial, supported by the evidence in the record, the trial court abused its discretion in denying appellant's motion.[1] Accordingly, this court should reverse the trial court's judgment and remand for a new trial. Because the court instead affirms appellant's conviction, I respectfully dissent.

1. In regard to appellant's testimony at the hearing on his motion for new trial that co-defendant Marcus Tavira would have provided favorable testimony for appellant, this person did not provide either testimony at the hearing or a sworn affidavit of his knowledge. Therefore, as the majority correctly concludes, we cannot speculate on this silent record, with respect to this particular potential witness, that appellant suffered prejudice. *See Melancon v. State,* 66 S.W.3d 375, 381 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). However, appellant presents no appellate contention regarding this specific witness.