IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0560-09






OSCAR PEREZ JR., Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


BRAZORIA COUNTY





 Meyers, J., delivered the opinion for a unanimous Court.


O P I N I O N


 

 Appellant, Oscar Perez Jr., was convicted of aggravated robbery, and the court 

assessed punishment at thirty-five years' confinement. Appellant's second court-appointed attorney filed a motion for new trial citing ineffective assistance of counsel. 
The hearing on the motion for new trial focused on the lack of preparation performed by
Appellant's trial counsel and the witnesses who could have testified on Appellant's behalf
had they been contacted. The trial court denied the motion for new trial, and Appellant
appealed to the Fourteenth Court of Appeals. The court of appeals concluded that trial
counsel's performance was deficient, but that the proposed witnesses would not have
benefitted Appellant. We granted review to consider whether the court of appeals erred
by failing to conclude that Appellant was prejudiced by his counsel's deficient
performance. We will affirm the court of appeals. 

I. Facts

 On the evening of November 30, 2005, two men wearing bandanas around their
faces entered the home of Maria Rangel. Maria lived there with her thirteen-year-old son,
Ernesto. When one intruder's bandana slipped, she recognized him as Marcus, (1) a friend
of her older son. She did not recognize the other man. Marcus demanded money and
then rummaged through Maria's belongings, pointing a knife in her direction the entire
time. Ernesto was able to recognize both men. He identified the man whose face
remained partially covered as Appellant. Ernesto knew Appellant as his brother's ex-girlfriend's brother. They had met approximately three times. According to Ernesto,
Appellant pointed a knife at him while Marcus "trash[ed] everything."

II. Trial court

 Appellant was charged with aggravated robbery and burglary of a habitation. 
However, after the State rested, it asked to reopen for the purpose of presenting more
testimony regarding the use of a deadly weapon. (2) The State also informed the judge that
it would be abandoning Count 2 of the indictment, the burglary of a habitation charge,
and proceeding only on Count 1, the aggravated robbery charge. In response, defense
counsel, Mark Racer, requested an instruction on the lesser-included offense of robbery in
exchange for the State's reopening. As a result, the jury charge included instructions on
aggravated robbery and robbery, and it did not include the burglary offense. The jury
returned a verdict finding Appellant guilty of aggravated robbery. The judge entered a
deadly-weapon finding and sentenced Appellant to thirty-five years' confinement.

 After the date of judgment, Racer filed a motion to withdraw as counsel. The
court appointed another attorney, Tom Stickler, to represent Appellant. Stickler filed a
motion for new trial citing five grounds, including ineffective assistance of counsel. At
the hearing on Appellant's motion for new trial, Racer testified that his attorney fee
voucher noted an hour and a half of trial preparation. A court-appointed investigator
listed four people who could possibly have served as witnesses for Appellant at trial had
Racer sought their testimony. One of the people named was Roselie Padilla. She lived in
a two-bedroom apartment with seven other people, including Appellant. Appellant slept
on the sofa in the living room, near to Padilla and her son, both of whom slept on the
floor. In her affidavit, offered at the hearing as evidence of an alibi, she stated that she
was certain Appellant slept on the couch every night the week of the robbery. (3) The court
denied the motion for new trial, finding that Appellant did not meet his burden of
showing prejudice under Strickland v. Washington, 466 U.S. 668 (1984). 

III. Strickland

 Strickland defines the elements required to show ineffective assistance of counsel. 
Id. at 687. There are two required components: a performance component and a prejudice
component. Id. 

 First, the defendant must show that counsel's performance was deficient. 
This requires showing that counsel made errors so serious that counsel was
not functioning as the "counsel" guaranteed the defendant by the Sixth
Amendment.

 

Id. To satisfy this prong of the analysis, a defendant "must show that counsel's
representation fell below an objective standard of reasonableness" based upon "prevailing
professional norms." Id. at 688. For this performance inquiry we consider all of the
circumstances, with "a strong presumption that counsel's conduct [fell] within the wide
range of reasonable professional assistance." Id. at 688-89.

 Second, the defendant must show that the deficient performance prejudiced
the defense. This requires showing that counsel's errors were so serious as
to deprive the defendant of a fair trial, a trial whose result is reliable.


Id. at 687. To satisfy this element, the "defendant must show that there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different." Id. at 694. To succeed on an ineffectiveness claim, a
defendant must show both components; failure to show either deficient performance or
prejudice will defeat the ineffectiveness claim. Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999). The defendant bears the burden of proving ineffectiveness by a
preponderance of the evidence. Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App.
2005); Moore v. State, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985). It was Appellant's
failure to show the second prong that resulted in the denial of his motion for new trial. 

IV. Court of appeals

 On appeal, Appellant argued that the trial court erred by denying his motion for
new trial. Specifically, he cited the failure to pursue his alibi witness and the failure to do
"any meaningful preparation or investigation" as constituting ineffective assistance of
counsel. The court of appeals reviewed Appellant's claim under Strickland's two-prong
test. Perez v. State, No. 14-07-00414-CR, 2008 Tex. App. LEXIS 9293 (Tex.
App.-Houston [14th Dist.] Dec. 11, 2008, pet. granted). 

 Under the first prong, the court decided that counsel's performance was deficient
based on the totality of the circumstances. Id. at *13-14. In particular, the court noted the
following facts as evidence that counsel's representation fell below the standard of
prevailing professional norms: Racer met with Appellant only two or three times before
trial; he prepared for an hour and a half the day before the trial commenced; and, at trial,
he did not present any witnesses or offer any evidence at all. Id. at *11-13. Therefore,
the court concluded that Appellant met his burden under Strickland's performance
component.

 Turning to the second prong, the court evaluated whether counsel's failure to call
witnesses at trial prejudiced the defense. The court reviewed Padilla's affidavit and the
testimony of Christina Pereda, who appeared at the hearing. Pereda lived in the same
apartment as both Appellant and Padilla. Pereda said that while she could not provide an
alibi for Appellant, Padilla could, and that she would have given Padilla's contact
information to Racer had she been given the opportunity to talk with him. The court
found Pereda's testimony and Padilla's affidavit to be too unspecific to be helpful, and
concluded that counsel's deficient performance did not affect the judgment. Id. at *16-17. Because Appellant did not satisfy his burden under Strickland's prejudice
component, the court of appeals decided that Appellant had not received ineffective
assistance of counsel. Id. at *18. 

V. Analysis

 We granted review to consider whether the court of appeals erred by failing to
conclude that Appellant was prejudiced by Racer's deficient performance. This issue
pertains to Strickland's second prong, and therefore we need not repeat the court of
appeals's analysis under the first prong, which determined that counsel's performance
was deficient. Counsel had "a duty to make reasonable investigations or to make a
reasonable decision that [] particular investigations [were] unnecessary," and the record
clearly shows that this duty was neglected. (4)
 Strickland, 466 U.S. at 691.

 Turning to the issue before this Court, Appellant asserts that he met his burden
under the second Strickland prong by showing that if Racer had properly investigated and
prepared for trial, Padilla would have served as an alibi witness, and the jury would have
likely found Appellant not guilty. To succeed under the prejudice component, Appellant
"must show that there is a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different." Id. at 694. A reasonable
probability is "a probability sufficient to undermine confidence in the outcome." Id. It
will not suffice for Appellant to show "that the errors had some conceivable effect on the
outcome of the proceeding." Id. at 693. Rather, he must show that "there is a reasonable
probability that, absent the errors, the factfinder would have had a reasonable doubt
respecting guilt." Id. at 695. We review the totality of the evidence when evaluating
Appellant's ineffectiveness claim. Id. 

 So, we ask whether there is a reasonable probability that the jury would have had a
reasonable doubt as to Appellant's guilt had Padilla appeared at trial as an alibi witness. 
A pre-Strickland opinion from this Court, King v. State, 649 S.W.2d 42 (Tex. Crim. App.
1983), is instructive on this question. In that case, the appellant asserted ineffective
assistance of counsel in part because no witnesses testified on his behalf. Id. at 44. We
stated that the "failure to call witnesses at the guilt-innocence and punishment stages is
irrelevant absent a showing that such witnesses were available and appellant would
benefit from their testimony." Id. Here, we are not convinced that Appellant would have
benefitted from Padilla's testimony, and we do not see a reasonable probability that her
testimony would have changed the result of Appellant's trial.

 Padilla's affidavit, the document upon which Appellant bases his entire
ineffectiveness claim, (5) states:

 The Defendant, Oscar Perez, was charged with Burglary of a Habitation
that occurred on November 30, 2005 at approximately 10:00 p.m. to 10:30
p.m. Throughout the entire month of November and into December of
2005, I was living at the residence of Christina Pereda. Also living at that
residence was my son and Oscar Perez. Each night, Oscar Perez slept on
the couch in the living room. Each night I, along with my son, slept on the
floor by the couch that Oscar was on. Each night, we went to bed about
10:00 p.m. I am certain that Oscar was sleeping on the couch every night
during the week of November 28th through December 2nd. I am certain
that there was no night that Oscar was not there nor any night that he left. I
remember this because it was the week after Thanksgiving and [sic] week
or so before Oscar said the police were looking for him. At no time did
Oscar Perez' attorney contact me prior to the trial.


This is not beneficial to the extent required by Strickland, as we do not see a reasonable
probability that Appellant would have been found not guilty had Racer presented
Padilla's testimony at trial. Strickland, 466 U.S. at 695. In fact, it is questionable
whether this even functions as an alibi defense. Black's Law Dictionary defines "alibi"
as, "A defense based on the physical impossibility of a defendant's guilt by placing the
defendant in a location other than the scene of the crime at the relevant time." Black's
Law Dictionary 56-57 (Abridged 7th ed. 2000) (emphasis added).

 The evidence concerning the timing of the robbery comes from the testimony of
Maria Rangel and her son, Ernesto. Maria stated, "And I think it was about 8:00,
something like that." Ernesto testified that the break-in occurred "[p]retty late, like 10:00,
10:00 o'clock." Padilla's affidavit does not make it impossible for Appellant to have
committed the robbery at around 8:00 or 10:00 p.m. on the evening of November 30. She
states that she is "certain" Appellant slept on the couch every night the week of the
robbery and that there was no night Appellant was not there. But with regard to
Appellant's presence at a specific time, the only information she provides is ambiguous. 

 She states, "Each night, we went to bed about 10:00 p.m." It is unclear whether
this one time-specific detail includes Appellant because the preceding sentence reads,
"Each night I, along with my son, slept on the floor by the couch that [Appellant] was
on." So by saying "we went to bed about 10:00 p.m.," she could be continuing to
describe how she and her son slept, or she could be referring to all three people. 
Therefore, we cannot agree with Appellant's assertion that "if the jury were to believe
Ms. Padilla, then they would find that she went to bed along-side Appellant and her son
on the night of the robbery at about 10:00 p.m., at the same time the robbery was
occurring at another location." 

 But even if Padilla is stating that Appellant went to bed at "about 10:00 p.m.," that
does not mean that it was physically impossible for Appellant to commit the robbery at
approximately 8:00 or 10:00 p.m. (6) Padilla's testimony is too vague to be of any benefit to
Appellant, and had she been called to testify at trial, we cannot say that there is a
reasonable probability that Appellant would have been found not guilty. (7) Padilla's
account is simply not the game-changer Appellant wishes it to be.

 In evaluating the potential impact of an alibi witness, we must also consider the
relative strength of the State's case. We compare the evidence presented by the State
with the "evidence the jury did not hear due to trial counsel's failure to investigate." 
Butler v. State, 716 S.W.2d 48, 56 (Tex. Crim. App. 1986). In Butler, we affirmed the
court of appeals's reversal of the defendant's conviction after concluding that he had
received ineffective assistance of counsel. Id. at 57. In that case, when reviewing the
prejudice component of the defendant's ineffectiveness claim, we considered the strength
of the State's case:

 No physical evidence linked appellant to the robbery. Only being stopped
for speeding near the scene of the offense led to his arrest. He was
convicted based on the identification testimony of only one witness, the
complainant.


Id. at 56. In contrast, the evidence that defense counsel failed to present to the jury
included the following:

 the sworn testimony of two witnesses that someone other than appellant was
actually the robber, and of a third witness that appellant was somewhere
else at the exact time of the robbery.


Id. After reviewing what the State did present in light of what the defense failed to
present, we concluded that the defendant had satisfied the second Strickland prong
because the evidence undermined our confidence in the outcome of the defendant's trial. 
Id. Appellant argues that the "strength of the case at bar is virtually indistinguishable
from Butler and [the conviction] should be similarly reversed, not because his innocence
was proven at the hearing on the motion for new trial, but so that the evidence may be
subjected to the adversarial testing required by the Constitution."

 But Appellant's contention ignores the standard required under Strickland: to show
prejudice, there must be a reasonable probability, sufficient to undermine our confidence
in the outcome, that the result of the proceeding would have been different had counsel
performed reasonably. Strickland, 466 U.S. at 694. And, Appellant's case is
distinguishable from Butler such that we hold that Appellant's conviction should not be
reversed. True, the State's case was not strong. The State presented three witnesses:
Steve Ricks, the detective who arrived at the crime scene two days after the robbery;
Maria Rangel; and, her son, Ernesto Rangel. Ernesto, who was thirteen at the time of the
robbery, was the only eyewitness who could identify Appellant's face, though it was
partially covered with a bandana. However, the evidence the jury did not hear due to
counsel's failure to investigate is nowhere near as beneficial as the evidence in Butler
(which included two witnesses who identified another man, by name, as the robber and a
third witness who placed the defendant in his apartment at the exact time of the offense). (8) 
Butler, 716 S.W.2d at 51. Despite the weaknesses in the State's case, we cannot say that
Padilla's affidavit, nor any of the other evidence explored at the hearing, (9) undermines our
confidence in the outcome of Appellant's trial. Strickland, 466 U.S. at 694. 

VI. Conclusion


 We conclude that there is no reasonable probability that the result of the trial
would have been different had counsel performed reasonably and satisfied his duty to
investigate. We agree with the court of appeals that because Appellant did not show that
his counsel's deficient performance prejudiced the defense, Appellant did not receive
ineffective assistance of counsel. We affirm the judgment of the court of appeals.


 Meyers, J.


Delivered: May 26, 2010

Publish
1. Throughout the trial, this man is called "Marco" and "Marcos." On his judgment form,
he is named "Marcus Antonio Tavira."
2. The State asked that the court submit to the jury a deadly-weapon special issue in the
charge.
3. Though it was admitted "for the purpose of this hearing," it is unclear to what extent the
judge actually considered the affidavit: "Even if I were to consider the affidavit, the affidavit is in
my opinion deficient to establish because it does not state that the witness Roselie Padilla would
be competent to testify, is over 18 or has personal knowledge of the facts." 
4. Because Appellant's argument to this Court is based upon Racer's failure to present
Padilla as an alibi witness at trial, the evidence of Racer's deficient performance that is most
significant to our review is his failure to investigate Appellant's alibi. Racer's notes from
meeting with Appellant on February 8, 2006, reveal that Appellant informed him of an alibi
witness, and yet, Racer did not attempt to track down the alibi witness, by calling Pereda, until
the first day of trial, March 5, 2007.

5. Appellant's brief states, "it is likely that the jury would have had a reasonable doubt and
found him not guilty if they had just been presented with the alternate version of events contained
in Ms. Padilla's affidavit."
6. We cannot agree with Appellant that the "affidavit does directly contradict the State's
position at trial."
7. Admittedly, the imprecise testimony from the eyewitnesses would be a hurdle for any
alibi. To benefit Appellant and satisfy Strickland, an alibi would have to at least account for
Appellant between 7:30 and 10:30 p.m.
8. We agree with Appellant that the court of appeals analyzed Padilla's affidavit too
harshly, though its result was correct. Reasoning that "Ms. Padilla's affidavit did not provide a
specific event that she and appellant attended the night of the robbery" and that "Ms. Padilla
failed to provide a specific date or event," the court of appeals overstated the requirement that the
testimony simply be beneficial to the extent that it undermines confidence in the outcome. Perez,
2008 Tex. App. LEXIS 9293 at *15. It would have been beneficial enough had Padilla stated
that she saw Appellant at a specific time at a location other than the crime-scene. Butler, 716
S.W.2d at 51 (witness testifying that she last saw the defendant when she left for work at 7:50). 
Contrary to the court of appeals's reasoning, Padilla did not have to say that she and Appellant
attended an event on the night of the robbery. 
9. The evidence presented by Stickler for the defense at the hearing on the motion for new
trial included the following witnesses: Mark Racer, Appellant's trial counsel; Michael Ward, the
court-appointed investigator who tracked down Roselie Padilla; Diana Perez, Appellant's mother
who testified regarding the lack of communication from Racer; Christina Pereda, who testified
that she could have provided Racer with the information necessary to contact Padilla; Appellant;
David Dowdy, one of the attorneys for the State; and, Melissa Perez, Appellant's sister who
stated that she did not know where her brother was on the night of the robbery. The exhibits
included the following: the attorney appointment form assigning Racer to Appellant; Racer's
attorney fee voucher; the judgment for Marcus; and, Roselie Padilla's affidavit.