**Affirmed and Memorandum Opinion filed April 12, 2016.**



In The

# Fourteenth Court of Appeals

---

NO. 14-14-00397-CR
NO. 14-14-00398-CR

---

**CEASAR LAKENDRICK RUSSI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1307885, 1307886**

---

# M E M O R A N D U M   O P I N I O N

Appellant, Ceasar Lakendrick Russi, appeals his convictions for aggravated robbery and aggravated assault, contending (1) the trial court erred in denying appellant's motion for new trial, (2) the trial court improperly commented on the weight of the evidence, and (3) appellant received ineffective assistance of counsel during the punishment phase. We affirm.

# I.   BACKGROUND

According to the State's evidence, around 5:30 a.m. on May 25, 2011, appellant approached Zoila Quintanilla's vehicle as she was pulling into her driveway.  Appellant had a gun and pulled Zoila out of the vehicle.  She began screaming for help, and her brother, husband, and son came out of the house.  Zoila's husband, Pedro German, pulled appellant out of the vehicle, and appellant fled on foot.  German got into the driver's seat, Isaias Quintanilla, Zoila's brother, got into the passenger seat, and Sergio Zacarias, Zoila's son, got into the backseat.  They followed appellant and spotted him hiding in some brush near their home.  As they drove up, appellant came out of the brush, grabbed onto the vehicle, and fired multiple shots, striking Isaias once in the forehead.

Then, appellant crossed the street, and German again followed him.  While Zacarias ran home to call the police, German attempted to stop appellant, but he ran away.  After the police arrived at the scene and Isaias was taken away in an ambulance, a forensic sketch artist met with Zoila, German, and Zacarias separately.  The police then canvassed the neighborhood with the resulting sketch, receiving tips that led them to the apartment complex where appellant resided.  Once the police had identified appellant as a suspect, they placed his photo into a photo lineup.  When presented with the photo lineup separately on the day after the incident, Zoila and German each positively identified appellant, and Zacarias tentatively identified appellant.

Isaias survived his wound but suffered severe, and likely permanent, injuries.  At trial, Zoila, Zacarias, and German described the event, again identifying appellant.  Appellant called Carlesha Rossi, appellant's sister, as his sole witness.  Rossi testified that at the time of the charged offenses, appellant was at Rossi's apartment.

A jury convicted appellant of both aggravated robbery and aggravated assault. The jury assessed punishment at sixty years' confinement for aggravated robbery, twenty years' confinement for aggravated assault, and a $10,000 fine.

Appellant filed a motion for new trial arguing, among other things, that he received ineffective assistance of counsel. The trial court held a hearing and denied appellant's motion for new trial.

## II.   DENIAL OF MOTION FOR NEW TRIAL

In appellant's first issue, he contends the trial court erred in denying his motion for new trial based on ineffective assistance of counsel. In the motion, appellant alleged that counsel rendered ineffective assistance by failing to call an available alibi witness to testify during the guilt-innocence phase.

We review a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). A trial judge abuses its discretion in denying a motion for new trial when no reasonable view of the record could support its ruling. *Id.* To determine whether the trial court abused its discretion, we view the evidence in the light most favorable to the trial court's ruling, and defer to the trial court's credibility determinations. *State v. Thomas*, 428 S.W.3d 99, 104 (Tex. Crim. App. 2014).

To establish ineffective assistance of counsel, a criminal defendant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).

3

Failure to show either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Strickland*, 466 U.S. at 697.

A criminal defense lawyer has the responsibility to conduct a legal and factual investigation and to seek out and interview potential witnesses. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). An appellant who complains about trial counsel's failure to call witnesses must show the witnesses were available and that appellant would have benefitted from their testimony. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Perez v. State*, 403 S.W.3d 246, 252 (Tex. App.—Houston [14th Dist.] 2008), *aff'd* 310 S.W.3d 890, 897 (Tex. Crim. App. 2010). The decision to call a witness is generally a matter of trial strategy. *Joseph v. State*, 367 S.W.3d 741, 744 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). However, an attorney is ineffective if the failure to seek out and interview potential witnesses precludes the accused from advancing a viable defense. *State v. Thomas*, 768 S.W.2d 335, 336–37 (Tex. App.—Houston [14th Dist.] 1989, no pet.).

In the motion for new trial, appellant asserted that his trial counsel was ineffective because counsel failed to call an available alibi witness, but appellant did not identify any such witness. However, in support, appellant submitted affidavits from his sister, Carlesha Rossi, and his girlfriend, LeSadia Harden, relative to the complaint about failure to call an alibi witness. At trial, Rossi testified as an alibi witness, while Harden was present but not called to testify. In an affidavit submitted in response to this motion, trial counsel explained that he considered the testimony of the two witnesses (Rossi and Harden) to be inconsistent and made a strategic decision in choosing whom to call. After a hearing, the trial court found that counsel's decision not to call Harden was strategic and did not qualify as deficient performance.

The affidavits submitted by appellant reflect that Harden was a potential alibi witness and would have testified that appellant was at his sister's apartment at the time of the charged offenses. However, we defer to the trial court's decision to believe that trial counsel made a strategic determination that Harden's testimony would not benefit appellant. Further, trial counsel's failure to call Harden as a witness did not preclude appellant from advancing a viable defense; trial counsel was still able to advance appellant's defense that he did not commit the offense and was elsewhere at the time through Rossi's testimony.[1] *See Joseph*, 367 S.W.3d at 744. We conclude the trial court did not abuse its discretion in finding that trial counsel was not ineffective and denying appellant's motion for new trial. We overrule appellant's first issue.

### III.   ARGUMENT REGARDING ALLEGEDLY IMPROPER COMMENT

In appellant's second issue, he contends the trial court erred when it responded to a jury question during punishment deliberations. The jury sent a note asking about concurrent sentencing, and the trial court responded in accordance with the applicable section of the Texas Penal Code. The jury's note said "explain concurrent sentencing." The trial court answered:

Dear Jurors,

Our law provides that when an accused is found guilty of more than one offense arising out of the same criminal episode — prosecuted in a single trial, a sentence for each offense for which he has been found

---

[1] Appellant relies on *Shelton v. State*, arguing that it "stands for the clear and unequivocal proposition that when an alibi witness is available to testify at a trial but is not called to testify that such a failure constitutes ineffective assistance of counsel." *See Shelton v. State*, 841 S.W.2d 526, 527 (Tex. App.—Fort Worth 1992, no pet.). However, appellant misinterprets *Shelton*, and the facts of the present case are distinguishable. In *Shelton*, counsel had neglected to call the one witness who could present alibi testimony, thus failing to advance any defensive theory. *See id.* In the present case, counsel called an alibi witness and advanced a defensive theory through her testimony. Therefore, counsel's decision not to call a second alibi witness did not prevent appellant from presenting a defense.

guilty shall be pronounced.

The sentences in these <u>two</u> cases shall run "concurrently"—that is, they run together.

They <u>do not</u> run "consecutively,"—that is, they are <u>not "stacked"</u> which means that a person who is sentenced to consecutive sentences has to complete serving one sentence before he begins serving the next.

Appellant contends that the trial court's note was an impermissible comment on the weight of the evidence in violation of Article 38.05 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979). However, at trial, appellant did not raise any complaint about the trial court's communication, let alone that it was an improper comment on the evidence. In fact, the record reflects that counsel affirmatively stated he had no objection to the trial court's response to the jury's question. "Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial." *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013). Accordingly, appellant failed to preserve error on his appellate complaint. *See* Tex. R. App. P. 33.1(a); *see also Lyle v. State*, 418 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We overrule appellant's second issue.

## IV.    INEFFECTIVE-ASSISTANCE-OF-COUNSEL CONTENTION

In appellant's third issue, he contends trial counsel provided ineffective assistance during the punishment phase by failing to cross-examine any of the State's witnesses. Appellant did not make this argument in his motion for new trial, and therefore we have no explanation from trial counsel as to why he did not cross-examine the witnesses. During the punishment phase, the State called three witnesses—Zoila, Zacarias, and Daisy Escobar, Isaias's wife. Appellant's trial counsel did not cross-examine any of these witnesses, but he did call appellant's mother, Lisa Jones, to testify on appellant's behalf. Appellant argues that he was

unable "to lessen the brunt of the conviction decision by the jury" because trial counsel did not ask the State's witnesses any questions or explore alternative explanations for the witnesses' medical conditions.

We apply the same two-prong *Strickland* standard of review for a claim of ineffective assistance of counsel during the punishment phase of trial. *Hernandez v. State*, 988 S.W.2d 770, 772–74 (Tex. Crim. App. 1999). In the first prong of this test, reviewing courts must not second-guess legitimate strategic or tactical decisions made by trial counsel in the midst of a trial, but instead "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (quoting *Strickland*, 466 U.S. at 689). This means that unless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate "unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Id.* at 696–97 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

Cross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial. *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005). Not attacking a sympathetic eyewitness without very strong impeachment is often a sound trial strategy, as such an attack can offend jurors. *Id.*; *Dannhaus v. State*, 928 S.W.2d 81, 88 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Thus, unless there is a good basis on which to cross-examine, which appellant has not shown here, it can be more effective to refrain from cross-examining a damaging witness to minimize

the impact of the witness's testimony.[2]  Furthermore, trial counsel cross-examined the State's witnesses during the guilt-innocence phase and presumably made a calculated decision not to aggressively cross-examine these three at the punishment phase.

The record does not show whether counsel intentionally declined to cross-examine the State's witnesses because additional testimony might not have been beneficial.  *See Bone*, 77 S.W.3d at 834 n. 21.  We may not assume a lack of sound trial strategy on the part of defense counsel merely because we are unable to discern any particular strategic or tactical purpose in counsel's trial presentation.  *See id.* at 836 ("A vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent. . . .  [A] defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission.").  Accordingly, appellant has failed to satisfy the first prong of *Strickland*.  We overrule his third issue.

---

[2] Appellant argues that counsel should have cross-examined the witnesses to explore alternative explanations for the witnesses' medical conditions, citing specifically to Zoila's testimony about her weakened medical condition and mention of diabetes.  However, she did not testify that she actually had recent onset diabetes, but vaguely that she could possibly face it.  Cross-examination would have had little effect in impeaching or "lessen[ing] the brunt of the conviction."

## V. Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/  John Donovan
    Justice

Panel consists of Chief Justice Frost and Justices Christopher and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).