**Affirmed and Memorandum Opinion filed December 9, 2014.**



**In The**

## Fourteenth Court of Appeals

---

**NO. 14-13-00854-CR**

---

**ARNULFO GARCIA CANTU, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 12-CR-3324**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Arnulfo Garcia Cantu of indecency with a child[1] and assessed his punishment at seven years' confinement and a $10,000 fine. In a single issue, appellant contends that he was denied the right to effective assistance of counsel. We affirm.

---

[1] *See* Tex. Penal Code Ann. § 21.11 (Vernon 2011)

## BACKGROUND

Appellant lived with and dated the complainant's grandmother in Galveston for most of the complainant's life. On May 13, 2012, when the complainant was 12 years old, she told her mother that appellant had touched her breasts and vagina.

Appellant was charged with indecency with a child. Trial was set for July 8, 2013. A week before trial, appellant replaced his previously retained counsel with Justice Adjei. Adjei moved to continue the trial setting. The trial court granted Adjei's request, and trial was reset for August 19, 2013. Adjei again moved to continue the trial setting three weeks later. He asserted that he needed additional time to hire a private investigator and interview witnesses. The trial court denied Adjei's request.

Trial commenced on August 19, 2013. The complainant testified that appellant touched her breasts and vagina more than 10 times, and possibly more than 20 times. She stated that this began in 2005 when she was six years old and her family moved next door to appellant. At the time, the complainant's parents would go to work and appellant would babysit the complainant and her siblings.[2] The complainant stated that there were times when she was alone with appellant, or was present with him and her younger sister. The complainant also stated that there were times when she would spend the night at appellant's home. She testified that appellant touched her in different rooms in his home and that he did so after the complainant's grandmother went to work at 5:00 or 6:00 a.m., when it was still dark outside.

The complainant testified that appellant continued to touch her after she moved to Houston in 2008, when she was nine years old. She testified that, on her

---

[2] The complainant has three siblings: a sister, who is two years older; a brother, who is three years younger; and a sister, who is six years younger.

visits back to Galveston, there would be times when she was alone with appellant or was present with appellant and her younger sister. The complainant stated that the last time appellant touched her was during an overnight visit she and her younger sister made in early 2012. She stated that appellant touched her after her grandmother went to work.

The complainant testified that she told her older sister about appellant's touching after the last incident. The complainant was 12 years old at the time; her sister was 14. The complainant requested that her older sister keep appellant's touching a secret.

The complainant's mother testified that, on the evening of May 13, 2012, she returned home upset because the complainant had not cleaned their Houston home. The mother told the complainant that she would have to spend the next weekend at appellant's home. The complainant began to cry. She told her mother that appellant had been touching her between her legs at his home in Galveston since she was six years old.

The complainant's mother testified regarding the family's child care arrangements. She testified that her four children were looked after and cared for by herself, her mother, and appellant. The adults balanced their child care obligations with their work schedules. The complainant's mother stated that she was aware of times when appellant took care of the children by himself. She also testified that the complaint's grandmother worked two different positions. She was a café server and worked from 6:00 a.m. to 2:00 p.m. In addition, she sometimes worked as a banquet server from 5:00 p.m. to 2:00 a.m.

The Galveston Police Department investigated the complainant's allegations. The police department recorded a forensic interview of the complainant at the Galveston County Child Advocacy Center. The video was not

admitted into evidence at trial. According to the complainant's trial testimony, she stated on the video that appellant touched her when she was six years old, eight years old, 10 years old, and 12 years old. The complainant testified in court that appellant touched her at other times as well. The complainant stated that she gave the ages in the video because "it was just easier to explain it like that."

The complainant's mother was the first person over the age of 18 to whom the complainant made her outcry. The mother prepared a written statement for the Galveston Police Department, in which she wrote that the complainant told her that appellant touched her at night after the complainant's grandmother went to work.

Adjei cross-examined the complainant and her mother on potential inconsistencies between the complainant's statements. He asked the complainant about discrepancies between her testimony in court and her testimony on the child advocacy center video. He noted that the complainant testified in court that appellant touched her "a lot," but testified on the video that appellant touched her at the ages of six, eight, 10, and 12. Adjei questioned her: "[W]hich one is it?" The complainant responded: "All of them."

Adjei also questioned the complainant about the time of day the touching occurred. Adjei questioned her: "[O]n your video you stated that this incident happened at night?" The complainant responded: "I said it happened in the morning . . . but it was dark outside." Adjei also asked the complainant whether she could agree with her mother's written statement to the Galveston Police Department, stating that the complainant told her mother that the touching occurred at night. The complainant answered: "No."

Adjei cross-examined the complainant's mother regarding the time of day the alleged incidents occurred. He asked her whether her children ever spent the night at appellant's home when they lived next door to appellant. The mother

4

answered: "They wouldn't spend the night." She stated that her mother and appellant "live[d] upstairs." She stated that, on school nights, her mother and appellant would "bring the kids downstairs and put them to sleep. So, when I get home from work, they are sleeping." The complainant's mother stated that she wrote in her statement that appellant touched the complainant at night because "that's what she's told me." Adjei offered the mother's written statement into evidence following this exchange. The trial court admitted the statement.

Adjei did not call a child psychology expert in defense. Adjei called appellant and the complainant's grandmother. Appellant testified that he did not touch the complainant. He also testified that the complainant would not spend the night at his home when she lived next door to him and that he was never alone with the complainant. The complainant's grandmother testified that the complainant would not spend the night at appellant's home when the complainant lived next door to appellant. The complainant's grandmother also testified that appellant was never alone with the complainant.

The jury convicted appellant of indecency with a child. Appellant obtained another attorney to replace Adjei following his conviction and filed a motion for new trial, arguing that he received ineffective assistance of counsel from Adjei. The trial court held an evidentiary hearing on appellant's motion. Adjei testified that he did not hire a child psychology expert, in part, because he had not been paid his attorney's fees. Appellant introduced the affidavit of a licensed psychologist, whose areas of specialty include the evaluation and treatment of victims of sexual assault. The psychologist opined that "this case should have had the services of a psychologist." The trial court denied appellant's motion for new trial. Appellant timely appealed.

ANALYSIS

Appellant contends in a single issue that his conviction and punishment must be reversed because he was denied effective assistance of counsel at trial. Appellant asserts that Adjei's representation was ineffective because he (1) failed to hire a child psychology expert; (2) failed to conduct an adequate investigation; and (3) performed deficiently at trial by failing to give an opening statement, by introducing into evidence the mother's written statement to the Galveston Police Department, and by not cross-examining all witnesses.

## I.    Standard of Review

In reviewing claims of ineffective assistance of counsel, we apply the two prong test announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012), *cert. denied*, 133 S. Ct. 834 (2013). Under the *Strickland* test, an appellant must show by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 687-88; *Ex parte Jimenez*, 364 S.W.3d at 883.

To determine whether counsel's performance was objectively deficient under the first *Strickland* prong, we look to the totality of the representation and the particular circumstances of the case at the time of trial, ignoring the deleterious effect of "20/20 hindsight." *Jimenez*, 364 S.W.3d at 883; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We indulge a strong presumption that counsel rendered adequate assistance and acted in furtherance of a sound trial strategy. *Strickland*, 466 U.S. at 689; *Jimenez*, 364 S.W.3d at 883. To overcome the presumption of reasonable professional assistance, an allegation of ineffective

assistance must be firmly rooted in the record. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). An ineffective assistance claim with a record silent as to trial counsel's motivations will generally fail because the presumption that counsel's conduct was reasonable has not been overcome. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

To establish prejudice under the second *Strickland* prong, the defendant must demonstrate a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 687-88; *Ex parte Jimenez*, 364 S.W.3d at 883. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). To undermine confidence in a guilty verdict, the defendant must prove that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

When, as here, the defendant first raises the issue of ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Rodriguez v. State*, 329 S.W.3d 74, 81 (Tex. App.—Houston [14th Dist.] 2010, no pet.). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling, and will reverse only if no reasonable view of the record could support the trial court's ruling. *Id.*

## II.  Failure to Hire a Child Psychology Expert

Appellant contends that Adjei rendered ineffective assistance by failing to hire a child psychology expert to "challenge the veracity of the statements made by [the complainant] to her mother and to the jury." Appellant argues two related points. First, he argues that Adjei was deficient for not calling a child psychology expert to testify generally that "a child may lie about child abuse." Second, he argues that appellant was deficient for not hiring a child psychology expert to investigate whether the complainant's statements in her recorded forensic interview showed signs of unreliability or inaccuracy. According to appellant, Adjei could have used the expert's determination to impeach the complainant if the statements showed signs of unreliability or inaccuracy. We reject both arguments.

### A.  Failure to Hire an Expert to Testify

Appellant argues that "the best way" to challenge the complainant's statements to her mother and to the jury would have been to present the testimony of a child psychology expert "who would [have] testif[ied] that a child may lie about child abuse." Appellant presented the affidavit of a "child psychology expert" at the hearing on his motion for new trial. The affidavit states:

> A huge body of research and numerous sensational trials in the last 20 years have overwhelmingly demonstrated that children can be led into making false statements of sexual abuse through suggestive questioning, that children do sometimes lie even about sexual abuse, and that the vast majority of professionals let alone jurors are unable to detect intentional deception in children.

The affidavit concludes, "If someone with my expertise had been retained as an expert, the jury could have been educated to the . . . research-based information that might have led to an acquittal in this matter."

We hold that appellant's argument fails because appellant has not

8

established deficient performance under the *Strickland* standard; instead, he frames his argument in terms of the "best" trial strategy for challenging the complainant's credibility. Failure to follow the "best" strategy, or execute a strategy in the "best way," is not the *Strickland* ineffective assistance standard. *See Strickland*, U.S. 466 U.S. at 687-88; *Ramirez v. State*, 422 S.W.3d 898, 903 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel.") (citing *Robertson v. State,* 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)).

*Strickland* requires a defendant to prove that counsel's performance was deficient because it fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. Appellant has not established, by citation to authority or otherwise, that Adjei's performance fell below an objective standard of reasonableness due to his failure to hire a child psychology expert to testify at trial. *Cf. Garcia v. State*, No. 13-11-00016-CR, 2012 WL 1964591, at *10 (Tex. App.— Corpus Christi May 31, 2012, pet. ref'd) (mem. op.) (not designated for publication) ("[W]e note that there was no evidence presented from attorneys indicating that the prevailing professional norm requires expert psychological testimony in cases regarding sexual abuse of a child."). Therefore, we reject appellant's argument that Adjei performed deficiently due to his failure to hire a child psychology expert to testify at trial.

### B.    Failure to Hire an Expert to Investigate

Appellant raises a related argument that Adjei's performance was deficient because he failed to hire a child psychology expert to investigate whether the complainant might have provided unreliable or inaccurate information during her forensic interview at the child advocacy center. Appellant argues that expert review of the interview video could have uncovered suggestive interviewing

techniques, which, if detected, could have been used to impeach the complainant's credibility at trial. Appellant argues that Adjei's decision not to hire an expert was unreasonable under *Strickland* because it was based on financial rather than strategic considerations. *See Strickland*, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). Appellant cites *Ex parte Briggs*, 187 S.W.3d 458 (Tex. Crim. App. 2005), in support of his arguments.

In *Briggs*, a mother relied on her attorney's advice and pled guilty to injury to a child after her infant son died. *Id.* at 460. The mother's attorney had not consulted a medical expert prior to advising the mother because the mother had not paid the expert's fees. *Id.* The mother petitioned for a writ of habeas corpus on grounds that her attorney provided ineffective assistance of counsel. *Id.* The Texas Court of Criminal Appeals agreed. *Id.* It concluded that "counsel's *financial* decision to do nothing about the obvious need to develop evidence concerning [the son's] medical history did not reflect reasonable professional judgment." *Id.* at 469 (emphasis in the original) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)). The court stated that, although the mother's attorney was not required to pay for expert witness fees out of his own pocket, the attorney's failure "to take any steps to subpoena the treating doctors, withdraw from the case . . . or request state-funded expert assistance . . . constituted deficient performance." *Id.* The court further determined that counsel's deficient performance prejudiced the mother. *Id.* at 469-70. Medical records and expert opinions offered during the writ proceeding raised considerable doubt that the son died as a result of homicide, rather than natural causes. *Id.* at 469-70. This doubt raised a "reasonable probability" that the mother would not have pled guilty absent the attorney's deficient performance, and made it "highly likely" that a jury would have found

10

the mother not guilty. *Id.* Accordingly, the court vacated her guilty plea. *Id.* at 470.

Adjei testified that he did not hire an expert because he had not been paid his attorney's fees. Nevertheless, even assuming for argument's sake that Adjei's performance was deficient, appellant has not established prejudice. The affidavit of appellant's expert lists general concerns about child testimony in sexual abuse cases; it does not raise specific concerns about the complainant's testimony. Nowhere in the affidavit does the expert state that he has reviewed the complainant's forensic interview; he only speculates: "In the event that the forensic interview was not properly performed by the interviewer, the information which is elicited may not be reliable." By comparison, the mother in *Briggs* presented experts at the writ proceeding who had reviewed the relevant medical records, concluded that the mother had not injured her child, and determined that the child died of natural causes. *Id.* at 462-63. Additionally, the *Briggs* court noted that the child's medical records themselves raised considerable doubt that the mother had injured her child. *Id.* at 470. Here, we cannot review the video of the forensic interview because it was not introduced into evidence.

We conclude that appellant has not established a reasonable probability that the outcome of trial would have been different but for Adjei's failure to hire a child psychology expert to investigate the case. *See Strickland*, 466 U.S. at 687-88; *see also Chalker v. State*, Nos. 01-10-00204-CR & 01-10-00205-CR, 2011 WL 5428970, at *12 (Tex. App.—Houston [1st Dist.] Nov. 10, 2011, pet. ref'd) (mem. op.) (not designated for publication) (defendant did not prove that counsel's failure to hire a child psychology expert amounted to ineffective assistance in an indecency with a child case where the defendant's expert testified only as to what type of investigation he would have conducted). Therefore, appellant has not

11

established ineffective assistance of counsel due to Adjei's failure to hire a child psychology expert to investigate the case.

## III. Failure to Conduct an Adequate Investigation

Next, appellant argues that Adjei provided ineffective assistance by failing to adequately investigate the case.[3] Included in our analysis is appellant's related claim that Adjei's performance was deficient because he failed to hire an investigator.

Adjei testified that before trial he (1) met with the prosecutor several times; (2) interviewed appellant, the complainant's grandmother, and appellant's character witnesses; and (3) reviewed the previous defense counsel's file, the court's file, and evidence provided by the State. Adjei testified that he did not believe anything in his case file was acquired through his independent investigation. Appellant asserts that, despite requesting a continuance for the express purpose of conducting further investigation, Adjei failed to retain a private investigator; failed to conduct interviews of any of the State's witnesses; and failed to obtain additional records or documents that "might have" assisted appellant in his defense.

Defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Nevertheless, a claim for ineffective assistance based on trial counsel's general failure to investigate the facts of the case fails absent a showing

---

[3] Appellant asserts that Adjei failed to adequately investigate the law and facts of the case; however, appellant does not identify Adjei's alleged failures to investigate the law of the case, nor does he explain how Adjei's alleged failure to investigate the law of the case supports an ineffective assistance claim. We reject appellant's claim as it pertains to an asserted failure to investigate the law of the case due to inadequate briefing. *See* Tex. R. App. P. 38.1(i). Accordingly, we consider only appellant's claim that Adjei provided ineffective assistance by failing to conduct an adequate investigation into the facts of the case.

of what the investigation would have revealed that reasonably could have changed the result of the case. *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). "Ineffective assistance of counsel claims are not built on retrospective speculation; they must be firmly founded in the record." *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (internal quotation marks omitted).

Even if we assume for argument's sake that Adjei's investigation was deficient, we conclude that appellant has not shown prejudice. Appellant has not established that the results of additional investigation reasonably could have changed the outcome of this case. Appellant asserts that Adjei's investigation "could have led to an alibi . . . . Timesheets from [appellant's] place of employment may have shown" that appellant was never alone in his home with the complainant. Appellant also asserts that "a proper investigation could have . . . uncovered discrepancies in the State's witnesses' testimony . . . or avenues through which their credibility could be challenged." Appellant's speculation, however, does not establish a reasonable probability, firmly founded in the record, that the outcome of the trial would have been different had Adjei adequately investigated the case. *See id.* at 834 & n.21 (defendant had not established prejudice from allegedly ineffective assistance of counsel at the punishment phase of trial where the record did not show that other evidence existed beyond the cursory mitigating evidence adduced); *Martin v. State*, 265 S.W.3d 435, 441 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (ineffective assistance of counsel claim based on failure to investigate a driving while intoxicated case failed absent a showing that favorable breath-test evidence was available and not investigated).

Additionally, Appellant asserts that "a reasonably thorough investigation would have simply made [Adjei] better prepared for trial." Appellant's assertion,

13

however, does not establish prejudice for failure to investigate even if true. *See Stokes*, 298 S.W.3d at 432; *Perez v. State*, 403 S.W.3d 246, 252 (Tex. App.— Houston [14th Dist.] 2008), *aff'd,* 310 S.W.3d 890 (Tex. Crim. App. 2010) (although defense counsel inadequately prepared for trial by failing to investigate and interview potential alibi witnesses, counsel's deficient performance did not prejudice defendant because the record did not show that the result of the trial would have been different had the witnesses testified).

We conclude that appellant has not established ineffective assistance of counsel based on Adjei's failure to investigate the facts of the case.

## IV. Deficient Trial Performance

Finally, appellant contends that Adjei's performance at trial was deficient because he (1) failed to give an opening statement; (2) introduced the written statement of the complainant's mother, which corroborated the complainant's story and contained appellant's hearsay statement; and (3) failed to cross-examine the complainant's sister and father. Appellant argues that Adjei's trial errors collectively deprived him of a fair trial.

The record is silent regarding Adjei's trial strategy for any of the allegedly deficient trial decisions.[4] We determine that appellant has not overcome the strong presumption that each of Adjei's actions was reasonably professional and motivated by sound trial strategy.

### A. Failure to Deliver an Opening Statement

Appellant argues that Adjei's failure to deliver an opening statement amounted to deficient performance. We disagree. "Whether to deliver an opening

---

[4] Appellant only questioned Adjei about his trial strategy for admitting the mother's written statement. Adjei testified that he could not recall why he had offered the statement into evidence.

statement is entirely optional." *Darkins v. State*, 430 S.W.3d 559, 570 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (rejecting defendant's ineffective assistance claim based on counsel's failure to make an opening statement because counsel's conduct was not "so outrageous that no competent attorney would have engaged in it.") (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Adjei's failure to deliver an opening statement did not amount to deficient performance.

**B.**     **Introduction of the Mother's Written Statement into Evidence**

Appellant argues that Adjei performed deficiently by introducing into evidence the written statement the complainant's mother made to the Galveston Police Department. The mother's statement recorded the complainant's outcry. The mother wrote in her statement that appellant asked the complainant not to tell anyone that he had touched her. Appellant argues that Adjei's introduction of the mother's written statement constituted deficient performance because the statement "was more harmful to [appellant's] defense than helpful." Appellant asserts that the mother's written statement corroborated the complainant's testimony and introduced appellant's otherwise inadmissible hearsay statement.

The State argues that Adjei may have introduced the mother's written statement to show inconsistencies between the complainant's allegations recorded in the mother's written statement and the complainant's testimony at trial. The mother wrote in her statement that the complainant told her that appellant's touching occurred at night. The complainant testified at trial that appellant's touching occurred in the morning. Adjei argued at closing that discrepancies in the complainant's statements about when the touching occurred, among other discrepancies, discredited the complainant's credibility.

We determine that appellant has not rebutted the strong presumption that

15

Adjei introduced the mother's statement pursuant to the sound trial strategy of impeaching the complainant's credibility. *See Mallett*, 65 S.W.3d at 63. Therefore, Adjei's performance was not deficient, even though it also may have introduced otherwise inadmissible damaging evidence. *See id.*; *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (defendant failed to overcome the presumption that trial counsel employed sound trial strategy, despite introducing damaging evidence); *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007) ("It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.").

## C.    Failure to Cross-Examine the Complainant's Sister and Father

Adjei did not cross-examine the complainant's sister or father.[5]  Appellant asserts that Adjei should have cross-examined the sister to "discredit[] this witness or highlight[] discrepancies in the stories of other witnesses." Appellant, however, does not suggest how Adjei could have achieved either goal.

Appellant assert that Adjei should have challenged the father's remarks that the complainant was "sweet;" that her issues at school were the result of appellant; and that appellant "damaged" the complainant. The State argues that Adjei may have wisely refrained from cross-examining a sympathetic witness. *See Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005) ("Cross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial.").

We determine that appellant has not rebutted the strong presumption that Adjei's decisions not to cross-examine the complainant's sister or father were part

---

[5] The complainant's father testified at the punishment phase of trial.

16

of a sound trial strategy. *See Mallett*, 65 S.W.3d at 63. Therefore, appellant has not shown that Adjei's performance was deficient.

## CONCLUSION

We hold that the trial court did not abuse its discretion in denying appellant's motion for new trial because appellant has not established Adjei's ineffective assistance. *See Riley*, 378 S.W.3d at 457, 460 (reviewing ineffective assistance of counsel claim initially raised in a motion for new trial for the trial court's abuse of discretion in denying the motion for new trial; holding that the trial court did not abuse its discretion because defendant failed to meet his burden under *Strickland*). Having overruled appellant's sole issue, we affirm the trial court's judgment.


/s/     William J. Boyce
Justice


Panel consists of Justices Boyce, Jamison, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).